# THE BOARD OF COUNTY SCHOOL COMMIS-
# SIONERS OF CAROLINE COUNTY

*vs.*

## WESLEY L. BREEDING ET AL.

*Public school system: jurisdiction of State Board of Education.*

In a controversy between County School Commissioners and parties professing to be the School Trustees of a district school in that county, over the question of the opening or the closing of the school, it was: *Held,* that the question involved the proper administration of the public schools of the county, a part of the public school system of the State, and that it was a question in which the courts had not the power to interfere, as all such questions must be referred to and settled by the State Board of Education.                           p. 90

*Decided April 16th, 1915.*

Appeal from the Circuit Court for Caroline County.   In Equity.   (HOPPER and ADKINS, JJ.)

The facts are stated in the opinion of the Court.

The cause was submitted to BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER and STOCKBRIDGE, JJ.

*Reuben Garey,* submitted a brief for the appellant.

THOMAS, J., delivered the opinion of the Court.

This case is the result of one of those controversies which sometimes, and, unfortunately, too frequently occur between public school authorities of the State and those connected

with or interested in the administration of that system. In this instance the proceedings in the Court from which this appeal was brought were instituted by the Board of County School Commissioners of Caroline County against those acting as the trustees of one of the public schools of that county and the teacher employed by them.

The bill alleges that the plaintiff, "acting under what it considered to be its authority," concluded not to open during ·the year 1914-1915 a certain school in Caroline County known as Furman's Grove School and to furnish in lieu thereof other educational facilities "for the pupils who would otherwise attend" that school, and that the school building had remained closed, "so far as your complainant has directed, up to the present time"; that the defendants, Wesley L. Breeding, Charles E. Starkey and Thomas B. Starkey, "professing to be trustees of said Furman's Grove School, have installed the defendant, Norman Faulkner, as teacher in said school building, and that he is now teaching or attempting to teach in said school building"; that the said Faulkner is not entitled under the law to teach school in Caroline County, and that his appointment has not been confirmed by the plaintiff; that the plaintiff has notified the defendants not to use said school building or the books and other school equipment therein, but that the defendants have declined to cease using the building and have refused to surrender the books, etc., to the plaintiff. The prayer of the bill is for an injunction restraining the defendants from "installing any person as teacher in said school building," or using the same and the books and equipment therein for any purpose.

The answer of the defendants avers that Furman's Grove School has been established for twenty-seven years, and has had for a number of years, including the year 1913-1914, an average yearly attendance of more than twenty pupils; that the Board of County School Commissioners refused to open the school for 1914-1915, "against the earnest protest of practically all the patrons of the school and without * * * ob-

taining the consent of 60 per cent of said patrons to the clos-
ing of said school;" that the defendants, Wesley L. Breeding,
Charles E. Starkey and Thomas B. Starkey, are the trustees
of said school, and that they, on November 16th, 1914, opened
the school and installed Norman Faulkner as teacher; that
"they would be only too glad to co-operate with the plaintiff
in the management of said school and in the appointment and
confirmation of the teacher, but that the plaintiff has declined
to consider the appeal of the defendants in their representa-
tive capacity and as patrons of said school, and the appeal of
the other patrons of the school that it may be opened as in pre-
vious years and in the usual manner;" that they admit that
they have been notified not to use the school-house or books,
and that they have declined to deliver the books to the
"County School Superintendent;" that there is now pending
on the law side of the Circuit Court for Caroline County "a
mandamus proceeding to compel the complainant to open
Furman's Grove School," and that the plaintiff in its answer
filed in that case admits "that the average yearly attendance
of Furman's Grove School is more than twelve pupils, and
that the consent to its closing of sixty per cent of the patrons
of said school has not been obtained;" that the sole purpose
of the defendants in opening the school was to furnish educa-
tional facilities to the children "of the patrons" of the school;
"that the school attendance is good, the patrons of the school
are pleased at its being opened and that all the school prop-
erty is being used with scrupulous care;" that while Norman
Faulkner does not hold a teacher's certificate, "he is thor-
oughly qualified to act in that capacity;" that the defendants
propose to employ a person holding a teacher's certificate as
soon as they are able to do so, and "that they earnestly solicit
the co-operation of the Board of School Commissioners of
Caroline County in maintaining" said school "at the highest
efficiency."

The evidence in the case shows that the defendants, Wesley
L. Breeding, Charles E. Starkey and Thomas B. Starkey.

were not appointed trustees of Furman's Grove School in May, 1914, but that they have served as the trustees of that school for a number of years, including the year 1913-1914, without having taken the oath required by law or having received each year notice of their re-appointment. Previous to the opening of the public schools of Caroline County in the fall of 1914 the Board of County School Commissioners of that county decided not to open Furman's Grove School, and in lieu thereof to provide for the transportation of the pupils of that school to Ridgely School, which is located about three miles from the Furman's Grove Schoolhouse. Some of the patrons of the latter school appealed to the Board of County School Commissioners not to close it, and later, on the 24th of September, 1914, Henry W. Hinson, one of the patrons of the school, filed a petition in the Circuit Court for Caroline County for a writ of mandamus commanding the appellant to open the school. The Court held that the writ should be refused because it did not appear that redress had "been sought from the State Board of Education," and thereupon application was made to the State Board of Education to require the Board of County School Commissioners to open the school. A hearing was had by the State Board on the 16th of October, 1914, and on the 27th of October that board disposed of the matter by the following opinion and order:

"It is the opinion of the State Board of Education that, in the appeal made by certain petitioners who are patrons of the Furman's Grove School in Caroline County, represented by T. Allan Goldsborough, counsel, from the action of the Board of County School Commissioners of Caroline County in not opening, for this school year, the above named school, that section 25 of Article 77, which provides that 'in case of a school, the yearly average of which is twelve (12) or more, the Board of County School Commissioners shall obtain the consent of sixty per cent. (60%) of the patrons of the school district the school house of which is to be closed, in order that it may be consoli-

dated with another school,' is mandatory and not dis-
cretionary.

"By the auditor's report it appears that the yearly
average of the school in question has been twenty
(20) or more.   But it was stated as a fact by the
President and Secretary of the Board, and not de-
nied by the petitioners, that some of the pupils of
said school live in Queen Anne's County, and that
others came from what was known as 'Oakland School
District,' which has been consolidated with another
school; and further stated and not denied that there
are no recorded boundaries of Furman's Grove School
District.   Section 27 gives to the Board of County
School Commissioners the power to determine such
boundaries, and indeed enjoins upon said board the
duty to do so.

"The Board of School Commissioners of Caroline
County are hereby directed to fix the boundaries of
the Furman's Grove School district, and when so de-
termined, if the annual average attendance of *bona
fide* pupils of the school district as shall be laid down
were twelve or more for the school year 1913-1914,
the Board of School Commissioners shall open the
school and keep it open until the consent of sixty
per cent. (60%) of the school patrons of said school
district shall be obtained to consolidate the same with
some other school."

On the 30th of October Henry W. Hinson, in a petition
setting out the action of the State Board of Education, again
applied to the Circuit Court for a writ of mandamus com-
manding the Board of County School Commissioners to open
the school, and after a hearing the Court, on the 27th of
November, 1914, ordered the writ to be issued as prayed.   In
the meantime, after the State Board of Education passed the
order referred to, the trustees, on the 16th of November,
opened the school and employed the defendant, Norman
Faulkner, as teacher, whereupon the appellant, on the 18th

of November, filed the bill in this case. The school in question has been in existence for more than twenty years, and while it does not appear that there is any record of the limits of the school district, the school has been attended by pupils living within a certain area which was apparently recognized by the school authorities as the district from which pupils should be admitted. There is no evidence in the case to show that the appellant has, in accordance with the order of the State Board of Education, proceeded to fix the "boundaries" of the district. Norman Faulkner, the teacher appointed by the trustees, does not hold a teacher's certificate, and his appointment has not been confirmed by the Board of County School Commissioners. The school-house is being used only for school purposes, and there is no evidence in this case to show, and the plaintiff does not contend, that it is being injured or damaged in any way. The Court below having refused to grant the injunction and dismiss the bill, the Board of County School Commissioners has appealed.

The brief reference we have made to the pleadings and evidence is sufficient to show that this controversy is one between those who are or claim to be charged with certain duties in respect to the public schools of Caroline County, and that it involves the proper administration of the public school system of the State. In such cases this Court, holding that the parties should resort to the State Board of Education for a determination and final settlement of the dispute, has consistently refused to interfere. This is not the case of an attempt on the part of school officials to apply the public school funds or property to objects or purposes for which it was not intended, but a dispute between the School Commissioners and those claiming to be trustees of the school in question in regard to the right of the latter to keep the school open.

In the case of *Wiley* v. *School Commissioners,* 51 Md. 401, where a bill was filed by the trustees of a district school against the School Commissioners to enjoin them from oppropriating the school-house to the use of a high school, this

Court held that it was not a case for the interposition of a Court of equity, but one that should be left to the decision of the State Board of Education. After stating "the State Board of Education are charged with the duty of seeing that the provisions of the statutes are faithfully carried into effect, they are required to make by-laws for the administration of the public school system, not at variance with the law; they have power to suspend or remove examiners or teachers; and then it is provided that 'they shall explain the true intent and meaning of the law, and they shall decide, without expense to the parties concerned, all controversies and disputes that may arise under it,' " JUDGE ALVEY said: "This is a visitatorial power of a most comprehensive character; and it has been settled ever since the great case of *Phillips* v. *Bury*, 2 Term, 346, that such power is, in its nature, summary and exclusive. * * * If every dispute or contention among those entrusted with the administration of the system, or between the functionaries and the patrons and pupils of the schools, offered an occasion for a resort to the courts for a settlement, the working of the system would not only be greatly embarrassed and obstructed, but such contentions before the courts would necessarily be attended with great costs and delay, and likely generate such intestine heats and divisions as would, in a great degree, counteract the beneficient purposes of the law. It is to obviate these consequences that the visitatorial power is conferred; and whereever that power exists, and is comprehensive enough to deal with the questions involved in an existing controversy, as in the case here, courts of equity decline to interfere, and leave the parties to abide the summary decision of those clothed with the visitatorial authority." This rule has been recognized and followed in *Shober* v. *Cochrane*, 53 Md. 544; *Duer* v. *Dashiell*, 91 Md. 660; *Underwood* v. *School Board*, 103 Md. 181; *Zantzinger* v. *Manning*, 123 Md. 169, and *School Commissioners* v. *Morris*, 123 Md. 398.

In *School Commissioners* v. *Morris, supra,* the appeal was by the Board of County School Commissioners of Caroline

County from an order of the Circuit Court for that county "directing a writ of mandamus to issue, commanding it to open for pupils on September 15th, 1913, and keep open throughout the scholastic year as in previous years, and in the usual way the Boonsboro School in that county." The petition for the writ was filed by George W. Morris, a patron of the school, and alleged that the School Commissioners, claiming to act under the power conferred upon them by section 25 of Article 77 of the Code, "had resolved to consolidate the Boonsboro School with the school in the town of Ridgely in Caroline County, and not to open the Boonsboro School for the scholastic year 1913." JUDGE BURKE, in disposing of the case said: "From the allegations of the petition it is obvious that the question involved in this case concerns the proper administration of the schools of Caroline County," and after referring to the cases cited above, he said further, "In each of these cases it was distinctly held that when the controversy or dispute is one involving the proper administration of the public school system of the State, the Court has no power to interfere, and that all such questions must be referred to and finally settled by the State Board of Education."

Cases may arise where a purely legal question is involved, as in *Duer* v. *Dashiell, supra,* and *School Commissioners* v. *Henkel,* 117 Md. 97, and which the Court has power to determine, but where the dispute is between "functionaries of the department of public education," or a question of school administration is involved this Court has refused to decide it. And we said in *Underwood* v. *School Board, supra,* "It may sometimes be necessary to have the process of a Court to enforce a decision of the State Board of Education."

As the writ of injunction was properly refused by the Court below, the decree appealed from will be affirmed.

*Decree affirmed, with costs to the appellees.*