MONTGOMERY COUNTY et al. *v.* YOST et al.

[No. 19, September Term, 1960 (Adv.).]

*Decided July 7, 1960.*

*Motion for rehearing and for stay of mandate filed August 3, 1960, denied September 13, 1960.*

The cause was argued before BRUNE, C. J., and HENDER-SON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Alfred H. Carter, County Attorney,* with whom was *Douglas H. Moore, Jr., Assistant County Attorney,* on the brief, for the appellants.

*James R. Miller, Jr.,* with whom were *James R. Miller, Sr.,* and *G. Richard Park* on the brief, for the appellees.

HORNEY, J., delivered the opinion of the Court.

The primary question on this appeal is whether certain of the provisions of Article VI of the charter of Montgomery County concerning county budgetary procedures, are so irreconcilably in conflict with certain of the provisions of the Code (1957), Art. 77, § 68, a public general law or statute concerning school budgetary procedures, as to make it procedurally impossible to administer the inconsistent provisions together.

The applicable statute (Art. 77, § 68) was enacted by the Acts of 1916, Ch. 506, § 26, and became effective June 1 of that year. There have been no substantial amendments since. The county charter was adopted November 2, 1948. Charter Art. VI was extensively amended in 1956, but it is not the validity of the amendment as such that is under attack in this

controversy. For the fiscal years which ended June 30, 1949, through June 30, 1959, the county manager received and reviewed the school budget submitted by the county board of education in the same manner as he received and reviewed the itemized estimates submitted to him by the head of each department or special agency in the executive branch of the county government and each agency financed in whole or in part by county funds, except the bi-county agencies—Maryland-National Capital Park and Planning Commission and Washington Suburban Sanitary Commission—which submit their requests or budget estimates directly to the county council. During those years, 1949 through 1959, the council adopted the school budget in accordance with the provisions of charter Art. VI, *supra.*

But, on October 6, 1959, the council, in an effort to harmonize and clarify what it termed were "ambiguous and conflicting provisions" between the public general law and the county charter, adopted Resolution No. 4-861, which provided in effect: (1) that the school budget should be submitted directly to the council as provided by code Art. 77, § 68, *supra;* (2) that the manager should review the original school budget and submit a recommended budget for the board of education, thereby following the procedures set forth in charter Art. VI; (3) that the manager should then recommend to the council methods for funding the original budget as well as the recommended budget; (4) that the public hearings contemplated by the charter should be held on both budgets; and (5) that the council should act on the budget submitted to it by the board of education and make any changes to be made therein pursuant to code Art. 77, § 68, *supra,* by a majority vote of the full council.

On January 26, 1960, William E. Yost, Jr., and James I. Humphrey, as taxpayers and property owners, brought suit against the county, the manager and the councilmen for a declaratory judgment—and for supplementary interlocutory and final injunctive relief—decreeing the resolution to be invalid. The relief sought was based on allegations to the effect that the procedures established by the resolution with respect to the school budget were improper because the budgetary procedures prescribed by the charter with respect

to other departments and special agencies were also applicable to the board of education and therefore controlling.

Following the hearing on the show cause order, the chancellor, in finding that the board of education was an "agency financed in whole or in part by county funds," within the meaning of the charter provisions, declared that the resolution was invalid and that the charter provisions should be followed with respect to all county departments and all agencies including the board of education. Final injunctive relief, based on the declaratory decree, was also granted. The county appealed.

Two questions are presented on this appeal: (i) whether or not the board of education is an "agency" of the county within the meaning of the budgetary provisions of the charter; and (ii) if it is such an agency, then whether or not the charter provisions are invalid when they are applied to the school budget in that they conflict with the statute relating to school budgetary procedures.

Code Art. 77, § 68, *supra,* provides in pertinent part as follows:

> "The county board of education, each year, * * * shall prepare, subject to the rules and regulations of the State Board of Education and on and with the advice of the county superintendent, an itemized and detailed school budget, * * *. This annual school budget shall be submitted in writing, not less than twenty days before the usual date for levying county taxes, to the board of county commissioners; * * *. [A minimum tax rate of 30 cents for maintenance and support of the schools or a rate of 40 cents for permanent improvements and maintenance and support is then provided.] * * * [T]he total amount requested for any one school year * * * shall not exceed a tax levied and collected of 40 cents on each one hundred dollars * * * unless the board of county commissioners shall approve and sanction such additional tax. * * * [I]f the total amount requested * * * exceeds * * * [40 cents on each $100] * * * and such additional tax is not approved

and sanctioned * * *, the county commissioners shall indicate in writing what item or items * * * have been denied in whole or in part, and the reason for the denial * * *."

On the other hand, charter Art. VI, § 1 b, *supra,* as amended, concerning the county expense budget as a whole, reads in part as follows:

"The head of each department or special agency in the executive branch of the county government and of each agency financed in whole or in part by county funds shall submit to the county manager an itemized estimate of the requirements of the department or agency for current expenses for the next fiscal year in such form and at such time as the county manager shall prescribe."

Other subsections concerning the county budget provide that the manager shall submit to the council an expense budget for the next fiscal year on or before March 10th of each year; that the council shall give notice of public hearings thereon to be held between March 26th and March 31st; and that the council shall also adopt the expense budget and appropriate the amount necessary to meet the expense items (as well as the necessary sums for capital projects and debt service) by not later than April 15th. Section 1 e also provides in part:

"No increase in any expense item thereof as recommended by the county manager shall be made or additional expense items added except on affirmative vote of at least 5 members of the county council after public notice by press release and opportunity for public hearing on the proposed increase or additional items."

Comparable provisions as to capital expenditures are prescribed by § 2 of charter Art. VI, *supra.*

Although the board of education is not a part of the executive branch of the county government nor an agency under its control, there is no doubt that it is an agency financed in

whole or in part by county funds. The plain meaning of the clause permits no other interpretation. Moreover, there is little doubt that the charter provisions were intended by the adopting voters to embrace the board of education and to require it to be as fully amenable to the charter budgetary procedures as the county departments and agencies are required to be. But, as we see it, the board of education, like the bi-county agencies or commissions, is not subject to the charter budgetary requirements. The bi-county commissions, which operate under special "local" laws applicable only to Montgomery and Prince George's Counties, were purposely excluded from complying with the budgetary procedures of Montgomery County in order to avoid any possibility of a conflict between the two counties with respect to fiscal matters. It is for this reason, *i.e.*, the existence of conflicts and inconsistencies between the provisions of charter Art. VI, §§ 1 and 2, *supra,* and code Art. 77, § 68, *supra,* that the board of education must also be excluded [1] from the operation and effect of the budgetary procedures required by the county charter. This is so because some of the conflicts and inconsistencies between the code and charter provisions are clearly irreconcilable.

Section 1 of Article XI-A of the Constitution of Maryland makes it clear that conflicts or inconsistencies between a county charter and a public general law must be resolved in favor of the latter. The chancellor did not find "any irreconcilable conflict" between the code and charter provisions "that would render the provisions of * * * [the latter] invalid so far as it relates to the budget of the County Board of Education." We cannot agree. As we read the inconsistent provisions there are several incompatible conflicts that defy harmonizing.

Though there are several irreconcilable conflicts between the code and charter provisions, we believe it will suffice to

---

1. In Baltimore County, the only other chartered county, the charter specifically provides that the state law with respect to the "organization, operation and administration of the County school system" shall be controlling. The City of Baltimore has authority to establish its own system of free public schools. See Code (1957), Art. 77, §§ 202-205.

consider only one or two of those which are patently inconsistent. As previously indicated, the charter contemplates that all annual budgets, including the school budget, shall be submitted "to the county manager" while the statute specifically directs that the school budget shall be submitted "to the board of county commissioners," which, by operation of law, is the county council in this case. Whether or not the budget should be submitted to one or the other may be relatively unimportant. It is what *may* take place under the charter if the budget had to be submitted to the county manager which would give rise to irreconcilable conflicts. The reason is clear. Under the charter, the manager, using the "itemized estimate of the requirements" of the board of education as a basis for *his* estimate of school needs, submits *his* school budget along with the whole of *his* county-wide "expense budget for the next fiscal year" together with *his* "recommended appropriations for current expenses" and "capital expenditures" to the county council for its adoption and appropriation of the necessary amounts to meet such expense items. These "estimates" may, of course, be decreased by the council to, but not below, the maximum fixed by the statute of 40 cents on each $100 of assessable property, but may not be increased except by the affirmative vote of five out of seven councilmen. Under the statute, however, it is the council, and only that body, free of all the restrictions imposed by the charter, that is authorized to "approve and sanction such additional tax" as may be levied to provide the amount requested by the board of education (for maintenance and support of the schools and for capital expenditures) over and above the maximum fixed by law for those purposes. Under the statute (as under the charter) the council also has power to *deny* such part of the requested additional tax as it may decide not to approve and sanction, but should it do so, there is a further statutory requirement that the council indicate in writing what item or items have been denied (in whole or in part) and the reason for the denial. There is no doubt, that under the statute, it is the county council, not the county manager, that must decide which items should be approved and which should be denied. Consequently, the terms of the statute being what they are, it is impossible to reconcile these

inconsistencies. Under such circumstances, the county charter provisions must yield to those of the public general law. We hold therefore that the school budget must be directly submitted to the county council to the end that it may perform the functions contemplated by the statute unfettered by the charter budgetary procedures. In the performance of the statutory functions we see no reason why the council should not seek advice from and the recommendations of the county manager with respect to the items for which the council has the power to levy an "additional tax." Nor do we see any reason why school budgetary matters should not be discussed or debated publicly, either separately if that be desirable, or at the same time that hearings on county budgetary matters are held under the charter provisions.

Finally, we see no reason why the resolution (No. 4-861) should be struck down. Since it purports to be an administrative decision affecting budgetary procedure problems, it is, at least, entitled to the *presumption* of validity usually accorded legislative acts of a chartered county. Cf. *Connor v. Board of Election Supervisors,* 212 Md. 379, 129 A. 2d 396 (1957). Although it is likely that some effort will be made to amend the charter or the statute or both, that will take time. In the meantime, it is possible that the resolution may for the present serve a useful purpose.

For the reasons stated the decree must be reversed and the case remanded for the entry of a declaratory decree in conformity with this opinion.

> *Decree reversed and case remanded for entry of declaratory decree in conformity with this opinion; appellees to pay the costs.*