# BOARD OF EDUCATION OF MONTGOMERY COUNTY *v.* MONTGOMERY COUNTY, MARYLAND

[No. 93, September Term, 1964.]

192 

*Decided December 7, 1964.*

The cause was argued before HENDERSON, C. J., and HAMMOND, PRESCOTT, MARBURY and OPPENHEIMER, JJ.

*Charles W. Prettyman* and *James C. Christopher* for the appellant.

Amicus Curiae Brief filed by State Board of Education. *Thomas B. Finan, Attorney General,* and *Mathias J. DeVito, Assistant Attorney General,* on the brief.

*Robert G. Tobin, Jr., County Attorney for Montgomery County,* with whom was *Lawrence E. Speelman, Assistant County Attorney,* on the brief, for the appellee.

OPPENHEIMER, J., delivered the opinion of the Court.

This is an appeal by the Board of Education of Montgomery County (the Board) from an order of the Circuit Court for Montgomery County dismissing the Board's petition for a writ of mandamus against Montgomery County (the Council).[1] The

---

1. The voters of Montgomery County on November 2, 1948 adopted a Charter in accordance with the procedure required by

Board's petition sought the following relief: (1) that the Council be directed to pay over to the Board all monies collected from the school tax levies and not appropriated at the end of the fiscal year 1962-63 (the surplus) ; (2) that the Council be directed to approve the Board's request for certain professional and clerical assistants; (3) that the Council be directed to furnish reasons in writing for its refusal to approve certain of the Board's requests in its 1963-64 annual budget, and (4) that the Council be directed to eliminate from the then current school tax levy an item representing a tax for debt service. The Council demurred to and answered the petition.

The Council has filed a motion to dismiss this appeal on the ground that the questions presented are moot. We reserved our ruling on that motion pending argument on the merits.

### The Motion to Dismiss

The Council contends that all the relief prayed by the Board pertains to the fiscal year 1963-64, which ended on June 30, 1964, and that therefore any action taken by this Court on this appeal can have no effect. It invokes the rule that the writ of mandamus, if issued, must be issued as prayed, and that it will not be issued at all where it will be nugatory. *Co. Comm. of Howard Co. v. Moxley,* 222 Md. 113, 158 A. 2d 895 (1960) ; *Pennington v. Gilbert,* 148 Md. 649, 652, 129 Atl. 905 (1925).

That rule is clearly not applicable as to the prayer for relief in the Board's petition in respect of the surplus. If the surplus, under the law, should have been paid to the Board in the fiscal year involved but was improperly withheld by the Council, the Council can not, by its own act, make moot the judicial grant of relief. In the issuance *vel non* of the writ of mandamus, courts invoke equitable principles to reach the real merits of the controversy. *Ipes v. Board of Fire Comm.,* 224 Md. 180, 183, 167 A. 2d 337 (1961) ; *Ghinger v. Fanseen,* 166 Md. 519, 526, 172 Atl. 75 (1934). As in a bill for specific performance with which

---

the Home Rule Amendment to the Constitution, Article XIA. Article IX of the Charter provides that the members of the new County Council shall take the place of the County Commissioners. See Co. Com'rs v. Supervisors of Elec., 192 Md. 196, 200, 63 A. 2d 735 (1949).

the writ has been compared, *Ipes, supra,* the petitioner's right to relief can not be defeated by the delay of the opposite party. See *Budacz v. Fradkin,* 146 Md. 400, 408, 126 Atl. 220 (1924). If the surplus should have been paid to the Board in the fiscal year 1963-64, it is money to which the Board is still entitled.

The other three matters as to which the Board's petition prays relief pertain directly to the fiscal year involved, which is now past. They involve issues of important public concern not only in Montgomery County but to the State as a whole, in respect of the scope of the legal power of the county authorities and the local school board. The questions involved are likely to recur frequently and there is a general interest in the establishment of rules of conduct as to the disputed matters for the guidance of all concerned. It was pointed out in *Lloyd v. Supervisors of Elections,* 206 Md. 36, 42-43, 111 A. 2d 379 (1954), that many courts regard the doctrine of mootness as a rule of decision rather than a question of jurisdiction, and hold that where the urgency of establishing a rule of future conduct in matters of important public concern is imperative and manifest, a departure from the general rule and practice of not deciding academic questions may be justified. This question was referred to but left open in *Bd. of Public Welfare v. Myers,* 224 Md. 246, 251, 167 A. 2d 765 (1961). However, as was noted in *Lloyd,* we have decided important recurring questions which otherwise would not have been heard on appeal merely because the current year to which the case pertained had expired, on the ground that otherwise the determination of the recurring question might be indefinitely delayed. *Lloyd v. Supervisors of Elections, supra,* and cases therein cited. See also *Frostburg v. Jenkins,* 215 Md. 9, 13, 136 A. 2d 852 (1957).

The question as to the surplus is not moot, and to prevent future recurring controversies on questions of public interest which, in all probability, could not otherwise be decided, we will consider the other issues involved.

For these reasons, the motion to dismiss is denied.

### The Surplus

As provided by Code (1964 Supp.), Article 77, Section 68, the Board has annually submitted its proposed budget to the

Council requesting funds for the coming year. Based upon this budget and under the authority of the same statute, a levy known as the school tax levy was made on the assessable property in the county for the purpose of meeting the budget. On many occasions, the county collector of taxes received more monies from a given school tax levy than had been requested by the Board or approved by the Council. These surpluses have accrued because of the impossibility of predicting at the time of the levy the exact amount of money a given tax rate will produce during the fiscal year. The surplus amounts have not been segregated but have been placed in the general treasury account of Montgomery County. These amounts have at all times been under the control and in the custody of the Council. The Board received from the school tax levy only such sums as were requested in its annual budget and approved by the Council.

Testimony adduced at the hearing showed that on June 30, 1963, the close of the year during which the petition was filed, there was in the treasury of Montgomery County over one million dollars, representing the accumulated surplus from school tax levies. It has been the practice of the Council to advance to the Board portions of its approved budget before collection of the entire school levy for the current year, but these advances were made from the Council's general funds and did not constitute an appropriation or payment of the accumulated surplus. The Council did not appropriate that surplus to the Board in order to maintain a reserve.

The Board contends that it is entitled to the surplus under the clear language of Section 68, which provides that "Taxes so levied shall be collected as other taxes and *shall be paid monthly to the treasurer of the county board of education* * * *." (Emphasis supplied.) The Council contends that because this language in the Section is preceded by the requirement that the Board's annual budget must be approved by the Council before the date for levying taxes, the Council's obligation to pay the funds raised by the school levy is limited to the funds actually requested in the Board's budget, even though the levy raises more money than that requested.

Section 68 is not an *ad hoc* enactment; it is part of a carefully conceived legislative structure in which the respective powers and limitations of local school boards, the State Board of Education and county governments are delineated and balanced. The board of education is not a part of the executive branch of the county government nor an agency under its control. It is an agency financed wholly or in part by county funds, but, like bi-county commissions such as the Maryland-National Capitol Park and Planning Commission and the Washington Suburban Sanitary Commission, it is not subject to the charter budgetary requirements. *Montgomery County v. Yost,* 223 Md. 150, 162 A. 2d 462 (1960). The State Board of Education has important supervisory powers over the local boards. *Wilson v. Board of Education,* 234 Md. 561, 200 A. 2d 67 (1964); *Zantzinger v. Manning,* 123 Md. 169, 90 Atl. 839 (1914); see also *School Com. of Car. Co. v. Breeding,* 126 Md. 83, 94 Atl. 328 (1915). While the county government has power to reduce amounts requested in the local school board's budget, that power does not run to the minimum tax, now forty cents on each one hundred dollars of assessable property; as to the minimum, the county government is under the imperative duty to levy the amount requested. *School Commissioners v. Gantt,* 73 Md. 521, 21 Atl. 548 (1891).

Viewed within this framework, the clarity of the statutory mandate that all the amounts collected on taxes for the school levy shall be paid to the Board is emphasized. In *Gantt,* the question was whether the County Commissioners could deduct from the school levy the treasurer's commissions for collecting and the amounts allowed to the taxpayers for prompt payment. The order of the lower court refusing a mandamus to pay over the full amount without the deductions was reversed. Judge McSherry, for the Court, said:

> "From these several provisions of the general and local laws it is quite apparent that when the Board of School Commissioners make demand upon the County Commissioners for an appropriation it becomes the duty of the latter to levy, under Art. 77, sec. 22, the amount required by the School Board up to ten cents

on the hundred dollars of taxable property. This duty is an imperative one. It is equally clear that when more than ten cents on the hundred dollars is required, the County Commissioners have, under the Local Code, Art. 2, sec. 123, a discretion to levy not exceeding ten cents additional. But when the levy is actually made, and unconditionally made, the statutes are explicit in declaring that no part of the sum levied for the use of the public schools shall be used for any other purpose, and that the amount so levied in each year shall be paid by the treasurer to the School Board in equal quarterly instalments. These clear and minute provisions plainly mean that the gross amount levied for the schools shall be paid to the School Board; and, of course, therefore, they necessarily exclude the right of the county commissioners, after they have made the levy, to diminish that amount by subsequently applying any part of it to any other use or purpose." 73 Md. at 524-25.

What was said in *Gantt* applies equally to the surplus here considered. All the tax collected is to be paid; withholding of the surplus, under the statute, is as impermissible as was the withholding of the commissions and discount. As in *Gantt,* mandamus is the appropriate remedy. See also *Thomas v. Field,* 143 Md. 128, 122 Atl. 25 (1923). The Council's argument as to the construction of Section 68 comes to no more than that the mandatory language as to payment to the Board does not mean what it says. We disagree. The Council's argument that the language of Section 68 is not applicable because Montgomery County has never been divided into districts is equally unsubstantial. Section 56 provides that the County Board of Education "shall divide the county into appropriate school districts." If, as in Montgomery County, the Board decides that the county as a whole is the most appropriate unit for administration, that administrative decision can not affect the mandatory provision for payment contained in Section 68.

The Council would have us apply the rule that where a statute is susceptible of two interpretations, a long and unvarying

construction by administrative officers has a persuasive influence. That principle of statutory construction, however, is only applicable when there is an ambiguity. Where, as here, the language is plain, no custom, however venerable, can nullify the act's clear meaning and purpose. *County Treas. v. State Tax Comm.,* 219 Md. 652, 657, 150 A. 2d 452 (1959), and authorities therein cited. Cf. *Smith v. Higinbothom,* 187 Md. 115, 125, 48 A. 2d 754 (1946).

The difficulties which the Board would encounter if the relief here prayed were not granted are patent. It can not spend money which is unappropriated, or determine what funds it has to apply against its current needs. The State Board of Education, in its helpful *amicus curiae* brief, suggests that if the Council keeps the surplus separate and apart from other county monies and sees to it that the money is not used for other purposes, the fund could be conveniently and expertly invested. The right of the Board to constitute the Council its fiscal agent for such a purpose is not before us. In the posture of this phase of the case, the mandamus which the Board asks for the payment of the surplus to it must be granted. Any interest which has been earned is to be paid thereon.

### Professional and Clerical Assistants.

In its budget request for the fiscal year 1963-64, the Board asked for seventeen positions for professional and clerical assistants to the county superintendent of schools. The Council denied this request in its appropriation resolution of April 15, 1963.

Article 77, Section 159(a) provides that "[t]he county superintendent of schools * * * shall nominate, for appointment by the county board of education, all the professional, clerical, statistical and stenographic assistants of the office * * *. But * * * their tenure and compensation, except as may hereinafter be provided, shall be determined by the county board of education." Section 159(n) provides for the creation of "other clerical, statistical and stenographic assistants and other professional assistants, assistant superintendents * * * as the county board of education shall authorize * * *." Section 159(o) provides that "[t]he board of county commissioners [the Council] *shall* levy sufficient funds to meet the scale of salaries provided

for in this section and *shall not deny any part of the amount requested for any one school year by the county board of education to be raised by local taxation for the payment of the salaries of the professional and clerical assistants of the county superintendent* * * *." (Italics and brackets supplied).

Sections 148, 149 and 150 of the Article deal with the position and duties of the county superintendent of schools. They show the important role the superintendent plays in carrying out the general policies of the State Board of Education. The professional and clerical assistants deemed necessary by the superintendent, subject to the approval of the Board, are a vital part of the over-all educational policy of the State Board. Section 159(a) makes clear the legislative intent that the number of these assistants is to be fixed by the Board and is not subject to curtailment by the Council.

The history of Section 159(a) and its predecessor enactments is set forth in 34 *Opinions of the Attorney General* 147 (1949). That history, as well as the unequivocal wording of the section, leaves no doubt as to the statutory mandate that the Council levy a tax sufficient to pay the requested salaries, even though the forty cent limitation contained in Section 68 is exceeded. See *Worcester Co. v. School Comr's,* 113 Md. 305, 313, 77 Atl. 605 (1910) and *School Commissioners v. Gantt, supra.*

The Council argues that Section 159(b) and (c) which set up a ratio between teachers and pupils limits the number of professional and clerical assistantships which may be created by the superintendent and the Board to the same ratio which applies between supervisors and teachers. This argument presupposes that professional and clerical assistants are within the class designated as supervisors. We do not agree. Sections 159 (d), (g) and (h) specifically set forth the minimum salaries for supervisors. Section 159(a) empowers the Board to set the compensation for professional and clerical assistants. It is clear that the supervisors referred to in the statute are teacher assistantships, while the professional and clerical assistants enumerated in Section 159(a) are administrative assistantships.

The Council further contends that a construction of the statute different from that which it suggests would mean that the Council must appropriate money for any one who in the view-

point of the superintendent of schools may be a professional assistant, and that to so construe Section 159(a) would strip the Council of its responsibility and duty as the appropriating authority under Section 68. We do not find that there is any conflict between Sections 159 and 68. It was for the Legislature to determine in what respects to give final decision as to financial needs to the educational expertise of the Board and when the general appropriating function of the Council was to govern. See *Zantzinger v. Manning, supra; School Com. of Car. Co. v. Breeding, supra.* As to professional and clerical assistants, the Legislature has provided that the Board's determination is binding upon the Council, and that the school levy must raise the necessary funds.

The lower court was in error in denying the relief prayed.

### *"Reasons in Writing" as to Amounts Denied*

Section 68 requires that the Council "shall indicate in writing what item or items of the annual budget of the county board of education have been denied in whole or in part, and the reason for the denial in whole or in part of the respective items." The Council itself gave no reason for the denial of some of the funds requested by the Board for the fiscal year 1963-64. The Council claims that a letter from its president to the president of the Board satisfies the statutory requirement.

In *B'd of Education P. G. Co. v. Co. Com.,* 131 Md. 658, 102 Atl. 1011 (1917), we held that, under an earlier but similar statute, the reasons for the denial of any portion of the funds requested for the school budget must not only be in writing but must be detailed. In that opinion, Judge Thomas, for the Court, said:

> "The statute leaves to the discretion of the County Commissioners the allowance of the amount asked for in excess of 40 cents on each one hundred dollars of assessable property in the county, and that discretion cannot be controlled by the courts. But the law imposes upon them the *ministerial duty,* when they do not allow the amount asked for in the budget in excess of 40 cents on each one hundred dollars of assessable

property, of indicating in writing what items of the budget are denied and their reasons for such denial. This provision can hardly be said to be directory only. It was designed, not only to guard against an arbitrary refusal of the County Commissioners to levy the amount deemed necessary by the Board of Education for public school purposes, but also to advise the County Board of Education of the items to which it is required to limit the expenditure of the school tax. *Worcester Co. v. School Comr's.,* 113 Md. 305 and *Foote v. Harrington,* 129 Md. 123." 131 Md. at 668.

The letter relied upon by the Council did not meet the requirements. Without attempting to summarize it, even had it been a communication from the Council, it is apparent that at least as to some of the items, the necessary detailed information was not furnished. However, Section 68 requires that the reasons be given by the Council and the record of the hearing below shows no adequate Council action on the matter.

The Council contends that the reasons for denial of part of the Board's request were given verbally and informally by members of its staff to members of the staff of the Board. As we pointed out in *B'd of Education P. G. Co. v. Co. Com., supra,* the statute requires written reasons for the denial. The Council is not bound by representations of its staff on such a matter; it can not delegate to its employees the performance of a duty which the Legislature has specifically provided shall be performed by the Council itself. *Brown v. District of Columbia,* 127 U. S. 579 (1888). See also *Baltimore v. Porter,* 18 Md. 284, 300, 79 Am. Dec. 686 (1862).

The lower court was in error in denying the relief prayed.

### *The Debt Service Charge*

The fourth prayer of the Board in its petition for mandamus is that the Council be required to eliminate from the then current school tax any item for debt service. In its levy resolution passed in April, 1963, the Council expressly included a charge for debt service incurred for financing of school construction in the amount of thirty-seven cents (Cf. *Gantt,* wherein the

Court referred to the fact that the County Commissioners did not order that the cost of collecting the tax should be deducted when it passed the school levy).

An item for debt service had also been included by the Council in similar levy resolutions for prior years. The debt represented by this item in the levy constituted a funding, through county loans, of items requested by the Board and approved by the Council for the construction of new schools. The Board concedes that the Council has the exclusive legal power to decide whether to fund the school needs through borrowing, but contends that it is unlawful to reflect the cost of such borrowing as a part of the school tax.

There is no provision in Section 68 or any other section of Article 77 which expressly prohibits long term financing of capital improvements for the schools or the inclusion by the Council of a proper amount on the school tax to pay for the expenses thereof. Cf. *Baltimore City v. Gorter*, 93 Md. 1, 11, 23, 48 Atl. 445 (1901) in which we pointed out that the Baltimore City Charter expressly prohibited the creation of debt for new improvements by the language "it shall not be lawful for the City * * * to create a floating debt for any such purpose." Absent such an express prohibition, there is a strong inference that the Legislature intended the Council to have the fiscal discretion inherent in its governmental functions to determine how to charge the cost of funding the debt. The method of handling such a charge may well have been deemed as much a matter for the financial wisdom of the Council as the determination of the number of professional and clerical assistants is a decision for the administrative expertness of the Board.

The Board argues that the reflection of the cost of borrowing in the annual levy is misleading to the State and county educational authorities and to the general public. The State Board of Education contends that denial of the right of the Council to do what it has been doing as to the debt charge would, in effect, require the Council to place all capital school construction on a pay-as-you-go basis, with attendant and unfortunate fluctuations in the annual school tax levy. These arguments go to public policy. The issue before us is one of statutory construction. It is not for this Court to decide what is best

for the school system and the taxpayers; our function is limited to determining how the Legislature resolved the question. We find no intendment or implication in the statute limiting the power of the Council to include the debt service charge in the levy.

The inclusion of the debt service charge in the levy was over and above the forty cent charge for maintenance and support of the schools. This was proper. See *Montgomery County v. Yost, supra,* at 223 Md. 157.

The ruling of the lower court in denying the relief prayed by the Board as to the inclusion of the debt service charge was correct.

> *Motion to dismiss the appeal denied; order dismissing petition for the writ reversed as to the first prayer for relief and case remanded for further proceedings to ascertain the amount of the surplus withheld and for the passage of an order directing such amount with any interest earned thereon to be paid by the appellee to the appellant; costs of this appeal to be paid by appellee.*