Dear The Honorable Charles R. Boutin
You have requested our opinion on the legality of three conditions that the Harford County Executive has proposed to include in the County budget for the Board of Education of Harford County ("the Board"). These conditions tie various sums of money to: 1) the creation of auditor positions to conduct certain performance audits, 2) the study of alternative methods of fleet maintenance and the submission of a report to the County, and 3) agreement by the Board to a health care benefits package mutually bid with the County.
In our opinion, a county may condition items in the county budget pertaining to the local board of education if the conditions satisfy general principles concerning budget conditions and do not attempt to regulate education or otherwise intrude on the board's responsibility to set education policy in the county. With respect to the conditions proposed for the Harford County budget, we believe that those conditions are permissible, with one exception. In particular, the portion of the first condition requiring the creation of auditor positions is beyond the authority of the county; however, the remainder of that condition and the other conditions appear to be consistent with State law governing the relationship between counties and local boards of education.
 I Background
A. Conditions Established in County Budget
In your letter requesting this opinion, you state that the County Executive for Harford County has presented a proposed budget to the County Council that increases education spending by $8 million over the previous year's budget. You state that, "[b]ecause of scarce resources, the County Executive targeted several potential cost savings areas" in the Board's budget and therefore placed certain conditions on the release of some of the funds allocated to the Board. The funds are to be held in a "Reserve Account" pending fulfillment of the conditions. Those conditions are described in the proposed budget as follows:
 Administrative Services This operating budget category will be increased by $135,000 from the Reserve Account category. These funds will be transferred to this category when the Board of Education has created and filled a full time permanent position for an auditor and an assistant auditor for the purposes of conducting an assessment of Harford County public school system practices to determine whether the Harford County public school system is operating economically and efficiently and whether corrective actions for improving its performance are appropriate. The Board of Education shall provide to the County Council and the County Executive on a semi-annual basis a detailed report of the auditor's findings on various aspects of the operation of the Harford County public school system. The report of the auditor's findings shall be public information.
* * *
 Student Transportation This operating budget category reflects a reduction of $200,000 that is being allocated to the Reserve Account category. These funds will be transferred back to this category when the Board of Education or its auditor has
 (1) thoroughly investigated alternative methods of fleet maintenance, including the fleet management program of the County, and
 (2) reported to the County Council and County Executive which method was determined to be most efficient and cost effective, and
 (3) the Board or its auditor has reported to the County Council and the County Executive a plan for implementation of the most efficient and cost effective fleet maintenance plan. The report of the Board or its auditor shall be public information.
 Fixed Charges This operating budget category will be increased by $1,488,279 from the Reserve Account category. These funds will be transferred to this category when the Board of Education agrees to a health care benefits package mutually bid with the County that includes separate memorandums of understanding.
* * *
 Reserve Account The Reserve Account category represents a reserve of County funds above the required maintenance of effort that are to be transferred by County Council action to the appropriate Board of Education categories when certain conditions are met. The following categories will be increased upon fulfillment of the conditions stated in the categories:
Administrative Services $135,000
Student Transportation $200,000
Fixed Charges $1,488,279
B. Response of Board of Education
In response to the proposed budget, the Board wrote to the County Executive and indicated that it believed that the conditions were "not legal." As a result, the Board stated, "we have redistributed the funds placed in the `Reserve Account' category designated in our budget" to the Administrative Services, Transportation, and Fixed Charges categories — i.e., those sections of the budget that the Executive had designated for the funds contingent upon fulfillment of the conditions.
Your inquiry essentially is whether the County may insist that the Board fulfill the conditions in order to receive the budgeted funds.
 II Analysis
A. County Education Budgets
Each county board of education must submit an annual school budget to the county government. Annotated Code of Maryland, Education Article ("ED"), § 5-102(b). That budget must include major categories established by State law. ED § 5-101. In counties with a county executive and a county council, "[t]he county executive shall indicate in writing which major categories of the annual budget . . . have been denied in whole or reduced in part and the reason for the denial or reduction." ED § 5-102(c). The county council "may restore any denial or reduction made by the county executive." ED § 5-102(c)(3).[1] Counties are required to provide a certain minimum level of education funding, known as the local maintenance of effort requirement, as a condition of increased State financial assistance for county schools. ED § 5-202. If a county council does not approve budget requests in excess of the maintenance of effort requirement, the council must indicate in writing "which major categories of the annual budget have been reduced and the reason for the reduction." ED § 5- 103(c).
Under these provisions, county boards "are subject to the county, not the State, budget process" and must justify their budget requirements to county governments which, "subject to certain limitations and requirements, have ultimate approval power over" annual school budgets. Chesapeake Charter, Inc. v. Anne ArundelCounty Board of Education, 358 Md. 129, 139, 747 A.2d 625
(2000). Moreover, it is implicit in this scheme that a board is to follow county budget procedures not inconsistent with State law. 68 Opinions of the Attorney General 236, 239 (1983).
B. Implicit Power to Condition Spending
It is well established that the power of a government entity to appropriate — and to eliminate or reduce an appropriation — implicitly includes the authority to set conditions on an appropriation in a budget. Bayne v. Secretary of State, 283 Md. 560,574, 392 A.2d 67 (1978) (General Assembly's authority to reduce or strike an appropriation "necessarily includes the authority to condition or limit the use of money appropriated, or the use of the facility for which the money is appropriated");Prince George's County v. Chillum-Adelphi, 275 Md. 374, 383,340 A.2d 265 (1975) ("the County may impose reasonable regulations relative to the funds which come from it"); see also South Dakotav. Dole, 483 U.S. 203, 206 (1987) (under the spending power, Congress can condition receipt of federal monies upon compliance with statutory and administrative directives).
The implied power to set conditions on spending is not without limitation. For example, a condition must be directly related to the expenditure of the sum appropriated, may not amend either substantive legislation or administrative rules adopted pursuant to legislative mandate, and may be effective only during the fiscal year for which the appropriation is made. Bayne v.Secretary of State, 283 Md. at 574. Similarly, the Supreme Court has held that the exercise of the spending power by Congress must be in pursuit of the general welfare and that a condition on the receipt of federal funds must be unambiguously expressed, must not conflict with other constitutional limitations, and must not be coercive. South Dakota v. Dole, 483 U.S. at 207-10. In our opinion, these general principles apply to conditions set by a county in the budget of the local board of education.
C. County Budget Conditions Limited by State Preemption of Education
It is also well established that the State has preempted the field of education. McCarthy v. Board of Education, 280 Md. 634,374 A.2d 1135 (1977); Board of Education v. Montgomery County,237 Md. 191, 205 A.2d 202 (1964). Prior opinions of this Office have noted that some types of budget conditions imposed under a county's authority to deny or reduce education appropriations could be at odds with the State's preemption of the field of education.[2]See, e.g., 81 Opinions of the Attorney General ____ (1996) [Opinion No. 96-036 (Nov. 15, 1996)]; 75 Opinions of the Attorney General
172, 178 (1990); 68 Opinions of the Attorney General 236, 238 (1983).
In a 1983 opinion, Attorney General Sachs concluded that a county charter provision that required the reversion of funds for capital projects under particular circumstances could not be applied to projects of a board of education. 68 Opinions of theAttorney General 236 (1983). That opinion also discussed whether such a requirement might be included as a budget condition under the county's power to deny appropriations under ED § 5-102, and concluded that:
 In our view, the most that can be inferred from ED § 5-102 and the other budgetary provisions is that school boards must generally adhere to county budgeting procedures. Unstated substantive restrictions on the use of appropriated funds are quite a different matter.
Id. at 239 (emphasis in original). While recognizing the principle that the power to reduce appropriations includes the authority to condition, Attorney General Sachs suggested that the principle was limited in the context of a local education budget by the General Assembly's preemption of the field of education:
 [W]e do not think that this general principle can reasonably be applied in an area in which local authority has been preempted. The General Assembly's intent to occupy the field of education would obviously be defeated if, for example, a county council were able to "condition" appropriations on the school board's adherence to the council's choice of a school building site or of curriculum requirements . . . .
 Just as State preemption is incompatible with local budgetary conditions that impinge on a school board's discretion to set education policy in accordance with State law, it is also incompatible with local budgetary conditions that constrain a board's discretion to spend funds in accordance with State law."
Id. at 240. Thus, Attorney General Sachs concluded that a county had no authority to impose any limitation or restriction on the use of a county board's funds "that is not authorized by State law." Id. at 240-41.
Similarly, in a 1996 opinion, this Office discussed how State preemption affected county authority relating to education, and concluded that a county was not barred from creating a program to award grants to individual public schools. 81 Opinions of theAttorney General ___ (1996) [Opinion No. 96-036 (Nov. 15, 1996)]. To determine whether county action was preempted, that opinion looked to whether the county program conflicted with provisions of the State education law or impinged upon the local board of education's responsibility for education policy. Id., slip op. at pp. 6-8. As an example of the application of those principles in the context of fiscal relations between a county and a local board, the opinion noted that "a county may not condition eligibility for a grant on a school's agreement to pursue a particular program of instruction." Id., slip op. at p. 7.
Thus, the power that a county government may otherwise have to condition appropriations is limited in the context of education. In particular, a county may not attempt to regulate education or intrude upon the local board of education's statutory authority to control educational matters that affect the county.
D. Conditions in Proposed Harford County Budget
The conditions that the County Executive has proposed do not offend the general principles concerning budget conditions. They appear to be reasonable, non-coercive restrictions similar in nature to conditions deemed acceptable for other entities that appropriate funds. See, e.g., Prince George's County v.Chillum-Adelphi, supra, at 383 (audit requirement); 59 Opinions ofthe Attorney General 70, 81-82 (1974) (requirement that an agency conduct a study and report its recommendations); 38 Opinions ofthe Attorney General 112 (1953) (limitation on number of employee positions). Indeed, they resemble conditions established by the General Assembly in the most recent State budget. See
Chapter 204, Laws of Maryland 2000, at Item KA06.02 (limiting portion of appropriation to establishing a service center staffed with two permanent positions) and Item LA12.10 (prohibiting expenditure of funds until a memorandum of understanding is executed between certain governmental units).
With two qualifications, we believe that the County Executive's proposed budget conditions do not conflict with State preemption of the field of education. Most of the conditions that the County Executive proposes can be characterized as nonsubstantive, procedural conditions related to the county budgetary process or are otherwise "authorized by State law." The 1983 Opinion suggested that this kind of condition would be permissible. For example, the restriction related to the Student Transportation category that conditions funds on a fleet maintenance study and reporting requirement appears to be procedural.
The condition applicable to the Fixed Charges category is worded somewhat ambiguously and conditions the appropriation of nearly $1.5 million on a mutual bid by the County and Board on a health benefits package and an agreement on unspecified "separate memorandums of understanding." If the language of the condition, coupled with the amount of restricted funds, effectively required the Board to purchase employee benefits through the County, the condition would be coercive. Moreover, it would be inconsistent with the discretion granted to the Board by ED § 4-123, which encourages boards of education and counties to enter into agreements for the cooperative or joint administration of programs that relate to, among other things, personnel. However, we understand that the funds associated with this item represent additional funds above the amount previously budgeted for employee benefits[3] and that the restriction is designed to encourage the Board to exercise its discretion under ED § 4-123 to achieve cost savings through joint purchases with the County.
The portion of the condition related to Administrative Services that links additional funding to a performance audit appears consistent with ED § 5-110, which encourages counties and boards of education to agree on school system performance audits. However, the County may not make funds available contingent on the creation of two audit positions, in light of the Board's control over staffing decisions. See Board of Education v. MontgomeryCounty, 237 Md. at 203 ("[T]he determination of the number of professional and clerical assistants is a decision for the administrative expertness of the Board.").[4]
With this one exception, the conditions do not purport to either "regulate" education or intrude on educational policy-making. Thus, it is our opinion that these conditions are presumptively valid.[5] See Montgomery County v. Yost,223 Md. 150, 158, 162 A.2d 462 (1960).
 III Conclusion
A budget condition that requires the Board to create new auditor positions may not be given effect, as it usurps the Board's control over staffing. However, the other conditions in the proposed County budget, as we understand them, comport with the general principles governing budget conditions and do not regulate education or encroach on the Board's authority to set education policy. In our opinion, they may be included in the County budget.
 J. Joseph Curran, Jr. Attorney General
 Robert A. Zarnoch Assistant Attorney General
 Robert N. McDonald Chief Counsel Opinions and Advice
[1] A somewhat different procedure pertains in Baltimore County. ED § 5-102(c)(4)-(5).
[2] An absence of power to regulate (as in the case of preemption) may not be conclusive on the authority to condition an appropriation. See South Dakota v. Dole, 483 U.S. 203 (1987) (even if Congress lacked the power to regulate drinking ages in the states, it could condition receipt of federal monies upon state adoption of a minimum drinking age). Notably, in Board ofEducation v. Montgomery County, where the Court of Appeals held that a county could not withhold from the local board surplus funds derived from the school tax levy, the Court also upheld a county fiscal decision to include debt service in a school tax levy. The Court said:
 Absent . . . an express prohibition, there is a strong inference that the Legislature intended the Council to have the fiscal discretion inherent in its governmental functions to determine how to charge the cost of funding the debt. The method of handling such a charge may well have been deemed as much a matter for the financial wisdom of the council as the determination of the number of professional and clerical assistants is a decision for the administrative expertness of the Board.
237 Md. at 203. Likewise, in its most recent pronouncement on the respective powers of counties and boards of education, the Court spoke in broad terms of county budget authority. See ChesapeakeCharter, Inc. v. Anne Arundel County Board of Education,358 Md. 129, 139, 747 A.2d 625 (2000).
[3] It is also notable that all of the conditions pertain to funds in excess of the maintenance of effort component of the budget.
[4] We note that an invalid condition in a budget may be treated as directory rather than mandatory. 74 Opinions of theAttorney General 53, 58-59 (1989).
[5] Nor, in our view, would the budget conditions be objectionable on the theory that they were submitted in an illegal format — i.e. the "reserve account" is a budget category not specified in ED § 5-101. The use of a "reserve account" appears to be a mere accounting mechanism to administer conditions that are tied to statutorily designated budget categories.
 *Page 177