Dear Charles Haughey
You have asked for our opinion whether the Montgomery County Inspector General ("inspector general") has "general audit authority" over the Montgomery County Board of Education ("county board of education"). You state that the Montgomery County Council ("county council") has asserted that the inspector general has such authority.
In our opinion, the county may authorize the inspector general to audit the board of education's financial transactions and accounts, but may not require the board to submit to a performance audit by the inspector general without the board's assent. If the board and county cannot agree on such an audit by the inspector general and the county desires to have the benefit of a performance audit, it may request that Maryland State Department of Education contract for a performance audit of the county school system.
 I Background
A. Montgomery County Inspector General
In 1997, the office of the Montgomery County Inspector General was created by county ordinance codified in the Montgomery County Code. Montgomery County Code ("MCC"), § 2-151. That law directs the inspector general to "identify actions which would enhance the productivity, effectiveness, or efficiency of programs and operations of County government and independent County agencies." MCC § 2-151(h). The ordinance defines "independent County agency" to include "the County Board of Education and the County school system." MCC § 2-151(n)(1). In developing recommendations, the inspector general is to "conduct investigations, budgetary analyses, and financial, management, or performance audits and similar reviews." MCC § 2-151(h)(1). The ordinance directs each department and independent County agency to "promptly give the Inspector General, any document or other information concerning its operations, budget, or programs that the Inspector General requests." MCC § 2-151(l)(l). For its part, the inspector general "must comply with any restrictions on public disclosure of the document or information that are required by federal or state law." Id.
B. Inspector General Audit of School System
The authority of the inspector general to audit the school system's operations has generated debate between the county council and the board. In February 2006, the inspector general released a report that criticized the school system's cost estimates and estimates of public support for an elementary school building project in Potomac. Office of Inspector General,Audit Report — Seven Locks Elementary School Projects ("SLES Report") (February 2006). The inspector general described the SLES Report as "an audit of cost data and other relevant information . . . In addition, we evaluated related management information presented to the Council and others regarding original construction plans and revisions. We also examined compliance with State and County laws and regulations related to the expenditure of County funds."[1] The SLES Report prompted county council members to call for increased scrutiny of the school system's operations; the county board of education requested that the inspector general confine its review to an audit of its financial transactions. See Board Seeks Ruling onInspector General's Reach, Washington Post (March 9, 2006), p. B02.
 II Analysis
A. County Government Authority to Conduct Audit of School System
 1. Financial Audits — Education Article § 5-109(d)
Under the State education law, a county board of education must "provide for an annual audit of its financial transactions and accounts" by a public accounting firm approved by the State Superintendent of Schools. Annotated Code of Maryland, Education Article ("ED"), § 5-109(a)-(b). The results of the audit are to be made public and reported within a specified period to various government entities, including the "county fiscal authority." ED § 51-09(c). The statute also allows for a similar audit by county officials. It provides that "[i]n addition to the audit required by this section, the county commissioners or county council may conduct an audit using auditors employed by the county." ED § 5-109(d). This provision clearly would require the board of education to submit to a financial audit by the inspector general.
In 1990, this Office concluded that, while this provision allowed a county government to audit a school system's financial transactions and accounts, it did not authorize the county to conduct a performance audit.[2] 75 Opinions of theAttorney General 172 (1990). The opinion explained that a financial audit generally refers to a review of an entity's financial statements to determine whether they fairly represent the entity's financial position in accordance with generally accepted accounting principles, while a performance review generally involves an assessment of the entity's practices to determine whether it is operating economically and efficiently and achieving its objectives and whether corrective actions for improving its performance are needed. Id. at 174. "[T]he State has preempted the area of educational budgeting, so that local school boards are not subject to county budgetary requirements, substantive or procedural, that are not authorized by State law."Id. at 178. Thus, the opinion concluded that "[a]n audit of the kind sought by the county may be conducted only if the General Assembly amends the statute to authorize it." Id. at 180. Seealso Letter from Assistant Attorney General Robert A. Zarnoch to Delegate Timothy Maloney (June 23, 1992) (noting that while "this opinion found that a county cannot require that a performance audit be conducted of a local board . . . nothing in State law prevents the board from selecting the county as the entity to conduct the audit") (emphasis in original).
2. Performance Audits — Education Article § 5-110
In 1996 the General Assembly enacted legislation to authorize county governments to obtain performance audits of local school systems under certain conditions. Chapter 88, Laws of Maryland 1996, now codified at ED § 5-110.[3] The statute requires the Maryland State Department of Education ("MSDE"), at the request of a county government, and in the absence of an agreement between the county government and a county school board, to contract for a performance audit of a county school system. ED § 5-110(b). MSDE is to make reasonable efforts to ensure that the results of the audit are available to the school board in time to be considered by the board in the preparation of its budget for the next fiscal year. ED § 5-110(c). The cost of the performance audit is to be shared equally between the county governing body and the school board. ED § 5-110(d). Finally, nothing prevents the county governing body and the school board from agreeing "to perform or contract for a performance audit of school board functions, including an agreement involving the scope of the performance audit or the responsibility for the funding of the performance audit." ED § 5-110(f). Thus, the inspector general could be authorized to conduct a performance audit of the board pursuant to an agreement between the county and the board.
 3. Whether the County May Require the Board to Submit to a Performance Audit by the Inspector General
The county council asserts that its budget review and information gathering authority permit the inspector general to conduct many of the same activities as a performance audit of the school system and implies that it may do so without the agreement of the county board of education required under ED § 5-110(f).[4] Thus, the county council suggests that ED § 5-110 does not prevent it from requiring the board to provide the inspector general with financial and other data, and directing the inspector general to analyze that information, as well as the activities and management of the local school system, for budgetary purposes. We see little difference between this activity and requiring the board to submit to a performance audit by the inspector general. See ED § 5-110(a) (defining "performance audit" as "an assessment of an entity's or program's practices to determine whether the entity or program is operating economically or efficiently and whether corrective actions for improving its performance are appropriate").
In our view, the county may not require the county board of education to submit to a performance audit by the inspector general for two reasons.[5]
First, local legislation concerning audits of boards of education that conflicts with State law is preempted. It is true that county school boards "are subject to the county, not the State, budget process and must justify their budget requests to the county government." Chesapeake Charter, Inc. v. Anne ArundelCounty Bd. of Educ., 358 Md. 129, 139, 747 A.2d 625 (2000). However, the county budget process must be consistent with the State's preemption of the field of education. 85 Opinions of theAttorney General 167,172 n. 2 (2000) (concluding that certain budget conditions imposed by a county "could be at odds with the State's preemption of the field of education"); see also
75 Opinions of the Attorney General at 178 (county school boards are not subject to local budgetary requirements that are not authorized by State law); 79 Opinions of the Attorney General
132, 134 (1994). "When properly invoked, the doctrine precludes local legislative bodies from enacting any legislation whatsoever in the preempted field." Ad + Soil, Inc. v. County Commissionersof Queen Anne's County, 307 Md. 307, 324, 513 A.2d 893 (1986).
Preemption occurs when the General Assembly "has manifested a purpose to occupy exclusively" a given field, such as audits of school systems by county governing boards. Ad + Soil, Inc.,307 Md. at 324. The Senate committee report concerning the bill that enacted ED § 5-110 stated that "[t]he purpose of Senate Bill 4 is to grant this authority to county governing boards." Floor Report for Senate Bill 4 (1996). Because the Legislature has spoken unmistakably on the subject of performance audits and has "reserve[d] for itself exclusive dominion over an entire field of legislative concern," the county council is precluded from "enacting any legislation whatsoever in the preempted field." Ad+ Soil, Inc., 307 Md. at 324.
Second, the county council may not require the county board of education to cooperate in such an audit of the school system by the inspector general because the county board of education is not a branch of county government. The Court of Appeals has held that a county board of education "is not part of the executive branch of the county government nor an agency under its control."Board of Education v. Montgomery County, 237 Md. 191, 197,205 A.2d 202 (1964). See also Chesapeake Charter, Inc. v. AnneArundel County Bd. Of Educ., 358 Md. 129, 136-37, 747 A.2d 625
(2000) (summarizing the status of a local board); Board ofEducation of Prince George's County v. Prince George's CountyEducators' Assn., Inc., 309 Md. 85, 95 n. 3, 522 A.2d 931 (1987) (describing local boards as "state agencies and not agencies of the county government" for collective bargaining purposes).
Of course, county boards of education are "locally oriented and, to some extent, locally funded [and] [f]or some purposes are treated like local agencies." 87 Opinions of the AttorneyGeneral ____ (2002) [Opinion No. 02-011 (August 14, 2002)] ("2002 Attorney General Opinion") at 2. Whether a county board is properly treated as a State or local agency "depends on the context of the board authority or function in question." Id.
at 3 (quoting 65 Opinions of the Attorney General 356, 358-59, 363 n. 3 (1980)). This requires a consideration of the State law governing the subject matter at issue.
As explained above, the General Assembly has comprehensively specified the circumstances under which a county may obtain a performance audit of a county board of education. While nothing prevents the board and the county from agreeing that the inspector general should conduct a performance audit, see ED § 5-110(f), the statute does not authorize a performance audit by a county inspector general or other auditor in the absence of an agreement. Instead, where no agreement is reached, the county governing board is to request MSDE to contract for an audit. ED § 5-110(b). Given the context of this statutory scheme, "these provisions leave little doubt that the Board is State agency" for purposes of performance audits. 2002 Attorney General Opinion at 4.
 III Conclusion
In our opinion, the county may authorize the inspector general to audit the board of education's financial transactions and accounts, but may not require the board to submit to a performance audit by the inspector general without the board's assent. If the board and county cannot agree on such an audit by the inspector general and the county desires to have the benefit of a performance audit, it may request that MSDE contract for a performance audit of the county school system.
 J. Joseph Curran, Jr. Attorney General
 Mark J. Davis Assistant Attorney General
 Robert N. McDonald Chief Counsel Opinions and Advice
[1] Notwithstanding the acknowledged scope of the SLES Report, the county council asserts that the SLES Report was a financial audit, not a performance audit. We express no views on the accuracy of that assertion.
[2] At that time, current ED § 5-109(d) was codified at ED § 5-108(d).
[3] Citing our 1990 opinion that "[u]nder current law, county governing body lacks statutory authority to obtain a performance audit of a local school system," the Senate committee reported that "[t]he purpose of Senate Bill 4 is to grant this authority to county governing boards." Floor Report, Senate Economic and Environmental Affairs Committee on Senate Bill 4 (1996). The committee noted that counties spend roughly one-half of their budgets on their local school systems and thus "have a strong interest in the fiscal accountability of the local school boards." Id. The expectation was that performance audits would provide school boards with information to operate more efficiently, thereby enhancing the confidence of the public in the local school system. Id.
[4] The county council also states that the inspector general has conducted other performance audits of school system functions without objection from the county board of education, including a performance audit report on the school bus transportation program (June 2000, with follow-up report submitted February 2003) and a "Computer Network Audit Report," (June 2002), written by a consultant to the inspector general.
[5] This conclusion does not mean that the county council may not direct its staff, or the inspector general, to analyze information voluntarily provided by the board of education or otherwise publicly available in connection with the county's budget process. *Page 152