PRINCE GEORGE'S COUNTY, MARYLAND *v.* BOARD OF TRUSTEES OF PRINCE GEORGE'S COMMUNITY COLLEGE

[No. 111, September Term, 1973.]

*Decided January 15, 1974.*

The cause was argued before MURPHY, C. J., and BARNES, McWILLIAMS, ▮ SINGLEY, SMITH, DIGGES and LEVINE, JJ.

*Robert N. Boyer* and *Harry L. Durity, Associate County Attorneys,* with whom was *Joseph S. Casula, County Attorney,* on the brief, for appellant.

*Daniel I. Sherry* for appellee.

DIGGES, J., delivered the opinion of the Court.

The appellant, Prince George's County, and the appellee, Board of Trustees of Prince George's Community College, here meet to litigate a disagreement over which of them is the proper party to control the expenditure of capital improvement funds voluntarily appropriated by the county for the benefit of the college. Unlike *Pr. George's Co. v. Bd. of Trustees,* 269 Md. 9, 304 A. 2d 228 (1973), involving a similar dispute, there exists in this case an actual controversy between the parties which is justiciable under The Declaratory Judgment Act (Maryland Code (1957, 1971 Repl. Vol.), Art. 31A).

In its appeal, Prince George's County contends that the community college, in expending moneys appropriated to it by that subdivision for capital improvements, must follow

the provisions of the Prince George's County Charter which regulate "agencies" receiving and disbursing county funds. Consequently, the appellant urges that because of specific provisions in its charter, the county, and not the Board of Trustees of Prince George's Community College, is the proper party to award contracts for engineering services, architectural services and construction of those capital improvement projects involved in this action.

This dispute centers around the college's desire to construct two buildings for its Largo campus. The first structure, to be financed one-half by the state and one-half by the county (with the county's portion appropriated by Council Bill No. 43-1971), is a "classroom/student affairs" building which is identified in the county's Capital Improvement Program 1972-78 as QC 00003. The second, a "student activities" building (identified in the county's Capital Improvement Program of 1973-79 as QC 00030) is to be financed solely with county funds appropriated by Council Bill No. 136-1972.[1] These appropriation ordinances were followed by bond authorizations (Council Bills Nos. 31-1972 and 180-1972)[2] providing for the sale of bonds, designated in the ordinances as community college bonds, issued and sold according to the wording of the authorizing legislation "for the purpose of providing funds for the construction and improvement of community colleges in the county" and "to pay the cost and expense . . . to finance the construction . . . of community college buildings [(specifically mentioning in attached schedules these two buildings)] . . . including . . . the cost of . . . architectural and engineering services . . . ." Upon sale of the bonds, the college, acting upon the recommendation of an architectural search committee, proceeded pursuant to its claimed

---

1. Council Bills Nos. 43-1971 and 136-1972 are the Annual Budget and Appropriations ordinances of Prince George's County for the fiscal years 1971-72 and 1972-73 respectively.

2. Council Bill No. 31-1972 is the bond ordinance raising $2,575,000 for, among other capital improvements, the classroom building; and Council Bill No. 180-1972 is the bond ordinance raising $5,120,000 for the construction of the activities building, among others. The wording of these two enactments, except as to the amount to be raised and the improvements to be constructed, is essentially identical.

authority contained in Code (1957, 1969 Repl. Vol.), Art. 77A, § 1(k) [3] to select and contract with Vosbeck, Vosbeck, Kendrick and Reddinger to provide architectural and related services necessary for the construction of the two buildings. However, this action met with resistance from appellant which refused to release some of the funds held by it to pay for the project. It was and still is the position of the appellant, under Art. V, § 508 and Art. VIII, § 822 of its charter, that the county is the proper party to award such contracts and the agreement executed by the college was unauthorized and therefore void. Because of the importance that the county places on these sections, we set them forth in full.

"Section 508. COMMON ADMINISTRATIVE SERVICES. To the extent permitted by State law and to the extent of their being available within the County government, any agency receiving or disbursing County funds shall be served by, and shall utilize, the services of the County for legal services, budgeting and accounting, receiving and collecting funds, purchasing, data processing, public relations, land acquisition, architecture and engineering, personnel administration, and such other administrative services as the Council may establish by law. The provisions of this section shall not be construed to preclude contracting for professional services in accordance with Article VI of this Charter.

Section 822. WORK PROGRAMS AND ALLOTMENTS. After the adoption of the budget

---

[3]. Under this section the college board of trustees is vested with the power

"To enter into agreements or contracts with any person, firm, or corporation, or with any county, State, federal or governmental agencies which are deemed by the board of trustees to be necessary or advisable to the establishment, maintenance, and operation of the community college. This power includes agreements between or among the counties and Baltimore City, their county commissioners or councils and boards of trustees designed to create and support a community college for two or more counties, or Baltimore City."

and before the beginning of each fiscal year, the head of each agency of the County government shall submit a work program to the County Executive. Such program shall include all appropriations included in the current expense and capital budgets for construction, operation, maintenance, and purchasing of equipment and shall show the requested allotments of appropriations for such agency by fiscal periods within the fiscal year. The aggregate of such allotments shall not exceed the total appropriation available to such agency for the fiscal year. A copy of the allotment as finally approved by the County Executive shall be filed with the Director of Finance who shall approve all expenditures for the various agencies of the County government to be made from the appropriations on the basis of the allotments and not otherwise. If at any time during the fiscal year, the County Executive shall ascertain that the available income, plus unexpended balances, for the year may be less than the total appropriations, he shall reconsider the work programs and allotments of the several agencies aforesaid, and shall revise them so as to forestall the making of expenditures in excess of the income and fund balances."

As a result of the action taken by the county in refusing to release the funds appropriated for the buildings, the college instituted this declaratory judgment action in the Circuit Court for Prince George's County and requested that the court declare:

" (a) that the [college], not Prince George's County, is the proper party to contract with architects and engineers selected by the [college] to render architectural and engineering services respecting any and all capital improvements for Prince George's Community College, whether or not such capital improvements are to be financed in whole or in part with county funds;

(b) that the [college], not Prince George's County, is the proper party to bid, award and contract for the construction of capital improvements for Prince George's Community College, whether or not such capital improvements are to be financed in whole or in part with county funds."

In addition, the college further sought the issuance of a writ of mandamus directing the county executive and the appropriate parties under his supervision to pay out of the funds held by the county for capital improvements those amounts which may from time to time become due "for architectural and engineering services and for the construction of those specific capital improvements . . . ." It is from the making of this requested declaration and its accompanying order that a writ of mandamus issue that the county appeals. For the reasons which follow, with certain modifications we affirm this judgment.

As we have previously mentioned, the county avers that §§ 508 and 822 of the charter require that it and not the college board of trustees award the contracts here in dispute. A perusal of these two sections reveals that they regulate the activities of *agencies.* Therefore we must first determine the meaning of the word "agency" as that term is used in the charter. It is defined in § 1017(m) of Art. X of that document as follows:

" (m) The word 'agency' when used to designate a subordinate element of government shall be construed as including all offices, departments, institutions, boards, commissions, and corporations of the County government and, *when so specified,* all offices, departments, institutions, boards, commissions, and corporations which receive or disburse County funds." (emphasis added).

It is apparent that this definition establishes two separate tests for determining whether the charter intends to treat a particular subordinate element of government as an "agency". To paraphrase § 1017(m), an institution would be

an agency either if it is one of the enumerated elements of the county government or if it is appropriately "specified" to be an "agency" for the purpose of applying the provisions of the charter to it. This second test would seem to permit the county to specify by legislation that a particular non-county office, department, institution, board, commission or corporation which receives and disburses county funds is an "agency", when to do so would not create a conflict with or violate any valid state statute. *Cf. Montgomery County v. Yost*, 223 Md. 150, 162 A. 2d 462 (1960). In applying these tests to the case now before us, it is clear that the community college does not meet the first criterion since it is certainly not an institution, board, or corporation *of the county government* but is one created and controlled by the State. Art. 77A, §§ 1-10. *Cf. Bd. of Ed. v. Montgomery County*, 237 Md. 191, 205 A. 2d 202 (1964). Therefore, to be an "agency" controlled by the provisions of the charter, the college must have been "so specified" in an appropriate manner. As the college is not designated either by the budget and bond ordinances involved in this litigation or in any other lawful manner, we hold that for the purposes of the contracts which are here in dispute the college is not an "agency" required to comply with the provisions of either § 508 or § 822 of the county charter. This is true without regard to the fact that to specify the college as an "agency" might very well be a nugatory act since such a designation may create an irreconcilable conflict with a valid state law and therefore be void.

The resolution of this issue does not bring us to the end of the road since we see § 508 as a conduit to other portions of the charter rather than as a terminal. That it is a passageway becomes evident from the concluding sentence of the section which states that the "provisions of this section shall not be construed to preclude contracting for professional services in accordance with Article VI of this Charter." Having been thus drawn into this segment of the charter, we see that § 601 provides for the creation of a "County Purchasing Agent". That office is given the responsibility for administering the purchasing policies of the county including, according to § 602 of the Article, "the

making of all purchases and the contracting for all public work and services for which payment is to be made out of County funds . . . ." In addition, this Article, by § 605 is made applicable "to the extent permitted by law . . . to agencies created by or operating under State law and which receive or disburse County funds." It is clearly discernible from this that if any portion of the charter controls the method by which the county is able to regulate the community college when it contracts for professional services to be paid with county funds it is Article VI and not § 508 of Article V. The question squarely before us, therefore, is whether application of Article VI to the college is "permitted by law". We hold that it is not.

As we have previously pointed out, Art. 77A, § 1(k) gives the college, through its board of trustees, the power "to enter into agreements or contracts with any person, firm, or corporation . . . which are deemed . . . to be necessary or advisable to the establishment, maintenance, and operation of the community college." To paraphrase our opinion in *Bd. of Ed. v. Montgomery County*, 237 Md. at 197, § 1(k) is not an *ad hoc* enactment, but is part of a carefully conceived legislative structure (*i.e.*, Art. 77A) in which the community college is established and the powers of the board of trustees are delineated. An attempt to compel the college to contract only through the county's purchasing agent runs into direct and irreconcilable conflict with § 1(k) of this state law. And, as Art. 77A, § 1(k) is a public general law this conflict between it and the charter must be resolved in favor of the state statute. Md. Const., Art. XI-A, § 1; *Montgomery County v. Yost*, 223 Md. 150, 162 A. 2d 462 (1960).

We conclude that there is no legal basis to substitute the county for the board of trustees as the proper party to award these contracts. In so ruling, we think that it is important to point out that as the law now exists the moneys appropriated by the county for capital improvements are voluntary appropriations and as such the subdivision may require that the college meet certain prerequisites or conditions before it can insist upon receipt of that money. In this case, however, the county chose to appropriate funds in

the form of unrestricted public grants and cannot under existing law refuse to release them. For this reason the chancellor's declaration that:

> "(a) That the plaintiff, Board of Trustees of Prince George's Community College, not the defendant, Prince George's County, is the proper party to contract with architects and engineers selected by the plaintiff to render architectural and engineering services respecting any and all capital improvements for Prince George's Community College, whether or not such capital improvements are to be financed in whole or in part with county funds;
>
> (b) That the plaintiff, Board of Trustees of Prince George's Community College, not the defendant, Prince George's County, is the proper party to bid, award and contract for the construction of capital improvements for Prince George's Community College, whether or not such capital improvements are to be financed in whole or in part with county funds."

is too broad in scope and must be amended so that the phrase in (a) which reads "any and all capital improvements for Prince George's Community College" and the phrase in (b) which reads "the construction of capital improvements for Prince George's Community College" be deleted and in their place in both (a) and (b) the words "the construction of capital improvements designated by the council as QC 00003 and QC 00030" be inserted.

Having disposed of the principal issue presented by this appeal, we turn briefly to the cross-appeal. Appellees' petition for a declaratory judgment was filed in the Circuit Court for Prince George's County naming as defendants the county and William W. Gullett, that political subdivision's chief executive. As a prefatory matter, pursuant to Maryland Rule 323 (Motion Raising Preliminary Objection), the trial court granted a motion which dismissed the county executive from this action. In doing so, the trial judge agreed

with Mr. Gullett that since the subdivision's charter in Art. I, § 101 designates the county as "a body corporate and politic" and in § 103 of that Article proclaims that "the corporate name shall be 'Prince George's County, Maryland,' and it shall thus be designated in all actions and proceedings touching its rights, powers, properties, liabilities, and duties", the only proper party to an action such as this is Prince George's County, Maryland, alone. From this ruling, the college has filed a cross-appeal. As the county and its executive both agree that each is bound by our decision on the other and more substantial issue in this case, though the county remains as the only respondent, we shall consider this point moot and dismiss the cross-appeal without determining the merits of that issue.

> *Declaration of the trial court amended as above indicated and as amended the entire judgment of the trial court is affirmed.*
> *Costs to be paid by the appellant.*