Dear Clyde "Rocky" Sorrell,
You have asked for our opinion whether the Maryland Historical Trust or the Montgomery County Historic Preservation Commission has jurisdiction over two capital projects proposed to be constructed by Montgomery College (the "College") on State land adjacent to its Takoma Park campus. You included with your letter a memorandum analyzing this issue, in which you concluded that the Maryland Historical Trust would have jurisdiction over these projects.
We have reviewed the matter and agree with your conclusions that the projects are subject to the consultative process of the Maryland Historical Trust and that they are not subject to the work permit process administered by the Montgomery County Historic Preservation Commission.
 I Background
A. The Projects
The Takoma Park campus of the College is currently separated by a right-of-way, which contains railroad and subway tracks, from the Jesup Blair Park (the "Park"), a public park established by the State of Maryland in the early 1930's pursuant to a devise of the park property to the State in the will of Violet Blair Janin. In 1933, the State accepted the park property, together with the terms and conditions of the devise, and authorized the Maryland-National Capital Park and Planning Commission ("MNCPPC") to provide for the perpetual maintenance of the property as "a park open to the public," and to take possession of, manage, and control the park. Chapter 505, Laws of Maryland 1933, now codified at Annotated Code of Maryland, Article 28, § 5-106.[1] The Park contains an historic residence, known as the Blair Mansion, which has been included by Montgomery County in its Master Plan for Historic Preservation.[2]
Apparently because the College's current Takoma Park campus lacks room for new buildings, College expansion plans have proposed limited use of the Jesup Blair Park. The MNCPPC has approved a proposal under which the MNCPPC would lease to the College, for a nominal sum, sufficient acreage within the Park to hold a cultural arts center (to be named the "Violet Blair Janin Cultural Arts Center") and a pedestrian bridge that would allow for passage over the railroad and subway tracks between the existing Takoma Park campus and that Center and the Park. Some interested citizen groups have alleged that construction of the projects in the Park would result in the destruction of large numbers of ancient trees, an asset of the Park property highly valued by Violet Blair Janin, and in significant adverse impacts to the Blair Mansion.
B. State and County Regulatory Schemes for the Preservation of Historic Structures
Inasmuch as the College capital projects pose at least a potential threat to the Blair Mansion and its environmental setting, the question has arisen whether the projects are subject to review or approval under State and County historic preservation laws.
Article 83B of the Annotated Code of Maryland, §§ 5-617 through 5-619, establishes a scheme under which "State units" must consult with the Maryland Historical Trust in connection with certain capital projects. For purposes of the statute, a "State unit" is defined broadly as follows:
(1) "State unit" means a unit of the State government.
(2) Except as provided in paragraph (3) of this subsection, "State unit" includes:
(i) a unit in a principal department of the Executive Branch of the State government; and
(ii) the governing body of a single county or multicounty district or authority.
(3) "State unit" does not include:
(i) the board of review of a principal department;
(ii) the governing body of a local government; or
(iii) a unit that a local government creates.
Article 83B, § 5-601(x) (incorporating by reference Annotated Code of Maryland, State Government Article, § 11-101(i)). In addition, consultation with the Maryland Historical Trust is required "prior to approval of the use of the proceeds of State general obligation bonds by the Board of Public Works." Article 83B, § 5-617(a).
The General Assembly has also authorized local governments to enact historic preservation laws. Within the Maryland-Washington Regional District, Annotated Code of Maryland, Article 28, § 8-101(c) authorizes the Montgomery and Prince George's District Councils to enact historic preservation regulations.[3]
Implementing this authority, the Montgomery County Code sets out a scheme, administered by the Montgomery County Historic Preservation Commission, under which an historic area work permit must be obtained for work on public or private property containing an historic resource designated in the Master Plan for Historic Preservation. Montgomery County Code, Chapter 24A, §§ 24A-1 through 24A-13.
You have asked for our opinion on which of these regulatory schemes applies to the capital projects affecting the Jesup Blair Park and Blair Mansion.[4] In the memorandum accompanying your request, you concluded that the College is a State, rather than a local, agency and that its capital projects are therefore subject to the State historic preservation scheme embodied in Article 83B of the State Code, and not to the local scheme set forth in Chapter 24A of the County Code.[5]
 II Analysis
A. Maryland Historical Trust Process
In our view, because the College's projects involve the use of State bond proceeds, they would be subject to the Maryland Historical Trust consultation process even if they were not sponsored by a "State unit." If the College is a "State unit," then it would be required to comply with the Historical Trust process for that reason as well.
B. Local Historic Preservation Process
1. Application of Local Historic Preservation Schemes to State Entities
The general rule is that the State is not subject to local zoning laws unless the General Assembly has clearly indicated its intention that the State be bound. See 85 Opinions of the Attorney General ___ (2000) [Opinion No. 00-010 (April 23, 2000)], slip op. at pp. 3-4. Based on that rule and a review of historic area zoning enabling legislation, Attorney General Burch concluded that State projects did not have to obtain the approval of a local historic preservation commission. 58 Opinions of the Attorney General 512 (1973).
A year after that opinion was issued, the Court of Appeals held that Anne Arundel County was required to obtain a permit from the Annapolis Historic Preservation Commission before the county could raze a church on county land within the Annapolis historic district. City of Annapolis v. Anne Arundel County, 221 Md. 268,316 A.2d 807 (1974). However, neither in that case nor in any other case has the Court held that the State is subject to local historic preservation laws.
Moreover, the Court of Appeals has subsequently affirmed the general rule that the State is not bound by local zoning laws "unless the General Assembly clearly indicates a contrary intent." Pan American Health Organization v. Montgomery County,338 Md. 214, 226, 657 A.2d 1163 (1995).
2. Whether Community Colleges are State Entities
Community colleges are locally oriented and, to some extent, locally funded entities that are created by State law. As such, they have characteristics of both State and local agencies. Whether a community college is treated as a State or local entity depends on the particular context in which the question arises. Thus, even though a local government is responsible for funding an agency, the courts have held that the unit can be a State agency for various purposes. Rucker v. Harford County,316 Md. 275, 283-85, 558 A.2d 399 (1989) (question of whether agency is State or local depends on whether creation and ultimate control of agency lies with State or local government).
The governance of a community college is controlled by State law. The State Education Article ("ED") creates a board of trustees in each county that has one or more community colleges. ED § 16-101(a). The members of the board are appointed by the Governor with the advice and consent of the Senate. E.D. § 16-101(c); § 16-411.[6] The board operates subject to the authority of the Maryland Higher Education Commission ("MHEC"), a State agency. E.D. § 16-103.
A community college is also treated as a local agency for certain purposes. Under the Local Government Tort Claims Act, a community college is considered a "local government." Annotated Code of Maryland, Courts Judicial Proceedings Article, § 5-301(c)(9). And a community college is governed by local government investment guidelines. Annotated Code of Maryland, Article 95, § 22F(a)(6)(ii).
A community college is funded by both the county and the State, according to various statutory formulas. E.D. § 16-305. A college budget must be prepared in accordance with county fiscal procedures and approved by the county governing body. E.D. § 16-301(d)-(e); see also E.D. § 16- 304 (authorizing county governing bodies to appropriate funds to establish and operate community colleges). Community college budgets are thus subject to a local government's "spending affordability" process. 79 Opinions of the Attorney General 34 (1994). Each community college is to be audited annually for compliance with MHEC guidelines as to fiscal and operating procedures. ED § 16-315. While the audit may be performed by the Legislative Auditor, it may also be performed by a local government auditor with the concurrence of the Legislative Auditor. E.D. § 16-315(d), (f).
In a 1973 opinion, Attorney General Burch reviewed the State law governing community colleges, which was substantially similar to the current provisions of the Education Article, and concluded that Montgomery College trustees were local, rather than State, officials for purposes of the State law that then required financial disclosures by certain public officials.[7] 58 Opinions of the Attorney General 343, 365-67 (1973). That conclusion rested on the local nature of the college and the fact that, although the board of trustees was appointed by the Governor, the board exercised its powers substantially free from State control and subject to the fiscal control of the county.
Shortly thereafter, however, the Court of Appeals concluded that a community college is a State agency for purposes of sovereign immunity. Board of Trustees v. John K. Ruff, Inc.,278 Md. 580, 586-87, 366 A.2d 360 (1976); Charles E. Brohawn Bros., Inc. v. Board of Trustees, 269 Md. 164, 304 A.2d 819 (1973). In Ruff, the Court based its holding on the State interest in public education, the history of the creation of community colleges by the State, the powers conferred on the boards of trustees under public general laws, extensive State funding of the schools, and other factors. Similarly, the Court has held that because a community college was "created and controlled by the State," it was not bound by county charter provisions regulating the receipt and disbursement of funds by county agencies. Prince George's County v. Board of Trustees,271 Md. 21, 27, 313 A.2d 678 (1974).
The rationale of those cases led Attorney General Sachs to conclude that a community college is a State agency for purposes of the State law that requires agencies to obtain the approval of the Board of Public Works before disposing of agency property. 64 Opinions of the Attorney General 66 (1979). In reaching that conclusion, the Attorney General cautioned: "A determination that a particular entity, especially one with trappings of both a State and a local agency, is a State agency for certain purposes does not necessarily require the conclusion that it is a State agency for all purposes. Rather, whether a particular agency is a State or local agency depends upon the context within which the particular question arises." Id. at 70 n. 1. See also 62 Opinions of the Attorney General 743, 749 n. 3 (1977) (noting that a community college may be a State agency for some purposes and a county agency for others).
We are aware of no case law or other authority that addresses whether a community college is a State agency for purposes of local historic preservation regulation. However, several aspects of the College projects about which you inquire and of the law governing Montgomery College suggest that these projects are State projects exempt from local historic preservation regulation. With respect to real property used by Montgomery College, the General Assembly has vested local officials with authority over site selection. E.D. § 16-413. While that statute does not make reference to historic preservation regulation or other zoning regulations, it does specify that any site recommended and approved for the College "[c]omply with State regulations and . . . [c]onform as far as practical with the land use plans of the county." E.D. § 16-413(a)(3)(ii)-(iii) (emphasis added). The limitation of local authority to site selection, the mandate that the site comply with State regulations, and the qualified reference to local regulation suggest that the Legislature did not contemplate that the College would be fully subject to local land use regulation. Moreover, these projects are located on State land and, because they are partially funded with State bond proceeds, are already subject to the State historic preservation process. In our view, the projects are exempt from local historic preservation regulation.
 III Conclusion
In our opinion, the College projects are subject to the consultative process of the Maryland Historical Trust under Article 83B and are not subject to the work permit process under the Montgomery County Code, administered by the Montgomery County Historic Preservation Commission. While the College need not obtain a work permit from the Montgomery County Historic Preservation Commission, it may find it desirable to voluntarily solicit the views of that agency and other interested groups in connection with these or similar projects.
 J. Joseph Curran, Jr. Attorney General of Maryland
 Judith A. Armold Assistant Attorney General Robert N. McDonald Chief Counsel, Opinions Advice
[1] We have been advised that Jesup Blair Park is the only property managed by the MNCPPC that is held in the name of the State, as opposed to a county or the MNCPPC itself.
[2] We understand that the College is currently working with consultants to assess the eligibility of the Blair Mansion for listing on the National Register of Historic Places. The obligation of a State agency to consult with the Maryland Historical Trust regarding a capital project depends on whether a potentially affected property is "listed in or eligible for the Maryland Register of Historic Properties." Annotated Code of Maryland, Article 83B, § 5-617. The Maryland Register of Historic Properties includes "all properties listed in or determined . . . to be eligible for listing in the National Register of Historic Places." Id., § 5-615(b).
[3] The General Assembly originally delegated authority to local governments to enact historic preservation laws in the general statewide zoning enabling act. See Chapter 874, Laws of Maryland, 1963, now codified in Annotated Code of Maryland, Article 66B, § 8.01 et seq. In 1975, the Legislature recodified that authority, for charter counties other than Montgomery and Prince George's Counties, in the Express Powers Act and , for Montgomery and Prince George's Counties, in the Regional District Act. Chapter 70, Laws of Maryland 1975, enacting Article 25A, § 5(BB); Chapter 892, Laws of Maryland 1975, enacting Article 66D, § 8-101(c), now codified as Article 28, § 8-101(c). A year later, the General Assembly amended Article 25A, § 5(BB) to clarify that charter counties had the same powers to enact historic preservation laws as non-charter counties had under Article 66B. Chapter 477, Laws of Maryland 1976. Materials in the legislative file for Chapter 477, submitted by the Attorney General's Office and the Department of State Planning, state that the purpose of the 1975 and 1976 bills was to transfer the authorization for historic preservation laws from Article 66B, which does not generally apply to charter counties, and to clarify that this authority is in addition to other planning and zoning authority in charter provisions or local laws. Statement and Explanation on House Bill 1151 (1976); Letter of Vladimir Wahbe, Secretary of State Planning, to Joseph E. Owens, Chairman, House Judiciary Committee (February 18, 1976).
[4] Your question appears to assume that a project may be subject to review by either a local historic preservation commission or the Maryland Historical Trust, but not both. However, nothing in the pertinent statutes or ordinances mandates that a project subject to local historic preservation review would be automatically exempt from State review, or vice versa. Because we conclude that the College projects are subject to review under one scheme but not the other, we need not address the question whether both schemes might apply in other circumstances.
[5] You have not asked, and we do not address, the question whether jurisdiction of the Montgomery County Historic Preservation Commission over projects affecting historic resources might extend to a project of a local public entity. See Annapolis v. Anne Arundel County, 271 Md. 265, 316 A.2d 807 (1974). Nor do we address the question whether capital projects sponsored by the MNCPPC would be subject to the State and County historic preservation schemes.
[6] In Montgomery County, the Governor appoints members from a list developed by a nominating committee of Montgomery County residents appointed by the County Council, the County Executive, and the school's alumni association; a student member is appointed without involvement of the Senate. E.D. § 16-411.
[7] That law was later revised and has been succeeded by the Public Ethics Law, Annotated Code of Maryland, State Government Article, § 15-101 et seq. The State Ethics Commission, which is now charged with construing that law in advisory opinions, has consistently treated community colleges as State agencies for purposes of the financial disclosure and secondary employment provisions of the Public Ethics Law. See State Ethics Commission Opinions 96-03, 92-6, 81-10, 80- 21, 80-9, compiled in COMAR 19A.
 *Page 26