Dear Martha A. Smith, Ph.D.
You requested our opinion whether the State Living Wage Law, Annotated Code of Maryland, State Finance and Procurement Article, § 18-101 etseq., applies to Anne Arundel Community College. In compliance with our procedures, you included with your request a copy of an opinion by counsel for the College. That opinion, a copy of which is attached, concluded that the Living Wage Law does not apply to Anne Arundel Community College.
We have reviewed the opinion and agree with its conclusion.[1]
Douglas F. GanslerAttorney General
Robert N. McDonaldChief CounselOpinions and Advice
 Law Office of Martin J. Snider203 Dreams Landing WayAnnapolis, Maryland 21401
 McGuireWoods LLP7 Saint Paul Street,Suite 1000Baltimore, Maryland 21202
 September 24, 2007
Martha A. Smith, Ph.D. President Anne Arundel Community College 101 College Parkway Arnold, Maryland 21012
Re: Application of Living Wage Act to Anne Arundel CommunityCollege
Dear Dr. Smith:
The Board of Trustees of Anne Arundel Community College (the "College") has requested our opinion whether Chapter 284 of the Laws of M aryland 2007 (codified at M D. CODE ANN., STATE FIN. PROC. § 18-101
et seq. and effective October 1, 2007) (the "Living Wage Act") applies to procurement contracts entered into by the College, a community college organized and existing under Title 16 of the Education Article of the Annotated Code of Maryland.
The Living Wage Act amended the General Procurement Law (codified as Division II (titles 11 through 18) of the State Finance and Procurement Article of the Annotated Code of Maryland) and requires statutorily-defined "living wage" hourly rates for labor supplied by certain employers pursuant to procurement contracts with "units." "Unit" is defined by the General Procurement Law as "an officer or other entity that is in the Executive Branch of the State government and is authorized by law to enter into a procurement contract" and does not include "(i) a bistate, multistate, bicounty, or multicounty governmental agency; or (ii) a special tax district, sanitary district, drainage district, soil conservation district, water supply district, or other political subdivision of the State." MD. CODE A NN., S TATE FIN. PROC. § 11-101(x). Accordingly, the application of the Living Wage Act to procurement contracts of the College depends on whether the College constitutes a "unit" under the General Procurement Law.
Maryland case law has long held that community colleges-are "state agencies" for some purposes. See Board of Trustees of Howard CommunityCollege v. John K Ruff, Inc., 278 Md. 580, 586-88, 366 A.2d 360, 364
(1976) (sovereign immunity); see also Davis v. Montgomery County,267 Md. 456, 463-66, 298 A.2d 178, 183-84 (1972) (eminent domain),Charles E. Brohawn Bros. v. Board, 269 Md. 169, 172, 304 A.2d 819, 823
(1973) (sovereign immunity) and Prince George's County v. Board ofTrustees, 271 Md. 21, 27, 313 A.2d 678, 681-82 (1974) (receipt and disbursement of county funds). The characterization of community colleges as state agencies, however, is not a categorical rule but depends on the context in which the analysis is applied. 87 Op. Atty Gen. Md. 17, 22 (2002); 64 Op. Atty Gen. Md. 66 n. 1 (1979); seealso 58 Op. Atty Gen. Md. 343, 365-67 (1973) (community college not state agency for purposes of Financial Disclosure Act).
While no Maryland authority has specifically addressed the application of the General Procurement Law to community colleges, Maryland case law addressing the issue with respect to local boards of education is instructive. In Chesapeake Charter, Inc. . v. Anne Arundel Board ofEducation, 358 M d. 129, 747 A .2d 625 (2000), the Maryland Court of Appeals held that the procurement of services by a county board of education is not that of a "unit" within the meaning of the General Procurement Law and is therefore not subject to that law. Id.358 Md. at 145-46; 747 A.2d. at 634. The court reasoned that (i) the budgetary and governance mechanisms for boards of education indicate that "they are not normally regarded for structural or budgetary purposes as units within the Executive Branch of the State government" and (ii) legislative intent evidenced the exclusion of boards of education from the General Procurement Law . With respect to governance and funding mechanisms, the court pointed to the local governance structure established for school boards that is balanced with the oversight of the State Board of Education and the budget process that vests ultimate approval power in the county government. Id. 358 Md. at 139; 747 A.2d. at 630-31. These qualities directed a finding that boards of education "are local in character." Id. 358 Md. at 139; 747 A.2d. at 631. In addition, the court identified the fact that statutory procurement requirements for boards. of education separate from the General Procurement Law survived the enactment of the General Procurement Law as evidence of "an intent to allow county school boards to continue to operate under those provisions and not subject them to an entirely new regime of substantive and procedural requirements." Id.358 Md. at 144; 747 A.2d. at 633. Moreover, the court noted that the procurement statutes specific to school boards were amended subsequent to the enactment of the General Procurement Law thereby "demonstrating clearly a legislative recognition that they were not superseded by the [General Procurement Law]." Id. Finally, the court reasoned that a Legislative decision to subject school boards to the General Procurement Law required a clear indication to do so and no such intent could be discerned. Id. 358 Md. at 145, 747 A.2d. at 634.
Community colleges and local boards of education share a number of attributes and a common lineage. Under prior law, local boards of education had responsibility for community colleges which responsibility was later abrogated by the Legislature when it enacted a statute authorizing the creation of a separate board of community college trustees in each county. See Davis v. Montgomery County,267 Md. at 463-64, 298 A.2d at 183; 75 Op. Atty Gen. Md. 96 n. 3 (1990) (discussing statutory history of community colleges). More pointedly, community colleges share the same attributes with local boards of education that directed the court's result in the Chesapeake Charter decision. From a governance standpoint, community college boards of trustees, like boards of education, are granted broad powers over the operations and affairs of their institutions including salary and tenure determinations, the acquisition and disposition of property, student fees and entrance requirements. MD. CODE ANN., EDUC. § 16-103. Community colleges are also administered, like boards of education, by a separate executive officer.Id. § 16-104. This local governance structure is balanced by the oversight responsibilities vested in the Maryland Higher Education Commission, a state-wide entity. Id. § 11-105. Funding for community colleges, like boards of education, is derived from both county and State sources. Id. § 13-305. The annual budget of a community college is subject to the review and approval by the county government.Id. § 16-302. Moreover, the level of State funding in each year is subject to a county's "maintenance of effort." That is, any increase in State funding is dependent on the county providing the same or greater level of funding to the community college from year to year.Id. § 16-305(d). Community colleges are also similarly situated with boards of education with respect to the statutory treatment of their. procurement activities separate and apart from the General Procurement Law. See id. §§ 16-311, 16-313 and 16-314. These statutory provisions were either in effect prior to the enactment of the General Procurement Law, survived the enactment of the General Procurement Law and have been amended following the enactment of the General Procurement Law or enacted after the enactment of the General Procurement Law. Accordingly, under the framework for discerning legislative intent set forth in Chesapeake Charter, this is evidence that the Legislature did not intend to subject community colleges to the General Procurement Law.
The legislative history of the Living Wage Act is also instructive. The Fiscal and Policy Note prepared by the General Assembly in connection with the Living Wage Act indicates that a number of State agencies are not subject to the Living Wage Act by virtue of their exemption, in whole or in part, from most of the State procurement law. The exempt agencies include the University System of Maryland, Morgan State University and St. Mary's College of Maryland. Each of these institutions has been exempted with certain exceptions from the General Procurement Law and has been granted the authority, "subject to review by [the Board of Public Works (in the cases of the University System of Maryland and Morgan State University) and the General Assembly (in the cases of all three institutions)],. . . to establish procurement standards and procedures." M D. CODE ANN., EDUC. §§ 12-112(a), 14-109(b) and 14-405(f). As noted above, community colleges, like local boards of education as well as their higher education peers, are subject to procurement rules separate and apart from the General Procurement Law of which the Living Wage Act is a part. The Living Wage Act does not have any express indication from the Legislature that it intended to upset the existing regime of procurement laws applicable to community colleges and include such entities with the scope of the Living Wage Act.
On the basis of the foregoing, we are of the opinion that the College is not a "unit" within the meaning of the General Procurement Law and, therefore, procurement contracts entered into by the College are not subject to the Living Wage Act.
The opinion expressed herein is based on an analysis of existing laws and court decisions and cover certain matters not directly addressed by such authorities. Such opinion may be affected by actions taken or omitted, events occurring, or changes in the relevant facts, after the date hereof. We have not undertaken to determine, or to inform any person of, the occurrence or non-occurrence of any such actions, events or changes. This opinion letter is solely for the benefit of the College and may not be relied upon or used by, circulated, quoted or referred to, nor may copies hereof be delivered to, any other person without our prior written approval. W e disclaim any obligation to update this opinion letter for events occurring or coming to our attention after the date hereof.
Very truly yours,
LAW OFFICE OF M ARTIN J. SNIDER MCGUIREWOODS LLP
[1] We note that the State Living Wage Law does apply to at least one community college. Procurement contracts of the Baltimore City Community College are governed by the State Procurement Law, including the Living Wage Law. Annotated Code of Maryland, Education Article, § 16-511(d). *Page 154