Dear Nancy S. Grasmick
You have each requested our opinion concerning a county's efforts to comply with the "maintenance of effort" ("MOE") provisions of the State education law, which set a minimum level of funding that a county must provide for its local school system. You each ask whether the method by which a county government sought to satisfy the MOE requirement for Fiscal Year 2010 is consistent with that law.
Your requests collectively relate to three instances in which a county government requested that the State Board of Education ("State Board") grant a partial waiver of the MOE requirement for the county for Fiscal Year 2010, as permitted by the State education law. In each instance, the State Board denied the request. Each county then enacted a budget that included the full amount of MOE funding for the school system, but also directed the school system to make payments through the county for debt service on school facilities — payments that had been made in previous fiscal years from the county budget rather than the school system budget. The counties relied on two slightly different mechanisms.
The governing bodies in Montgomery and Prince George's counties each restricted MOE funds by requiring that the local school system pay a part of the appropriation back to the county for debt service on school facilities. In Wicomico County, the County Council did not require that the local school board use budgeted MOE funds to pay debt service. Rather, at the suggestion of the *Page 178 
local board of education, it passed a separate resolution directing the local board to defray part of the cost of debt service from the local board's school construction fund — which had been accumulated from surplus funds from prior years' appropriations and was not part of the MOE computation for Fiscal Year 2010.
In our opinion, the budget restriction imposed by Montgomery and Prince George's counties is not a permissible means of satisfying a county's MOE obligation for Fiscal Year 2010. The MOE law states that shifting appropriations between a county budget and the school budget "may not be used to artificially satisfy" the MOE requirement. The shifting of debt service to the school board budget for the first time for Fiscal Year 2010 and its payment from MOE funds artificially satisfies the MOE requirement, unless a corresponding adjustment is made to the prior year's budget in computing the MOE target amount.[1] By contrast, Wicomico County has fully funded the MOE target without requiring the expenditure of a portion of those funds for an item paid by the County in previous years. The use, at the suggestion of the local board, of surplus funds in its school construction fund for debt service appears consistent with the State education law and the purpose of that fund.
 I Local Funding of Public Schools
Public schools in Maryland are funded, for the most part, by appropriations from the State and county governments.[2] On average, the counties provide approximately one-half of the funding of public schools while the State provides a little less than one-half and federal funds account for a little over 5% of total funding. The MOE requirement relates to the local portion of school funding. To *Page 179 
place the MOE requirement in context, it is useful to review first the State law that sets parameters for the budget of a local board of education.
A. Budget of Local Board of Education 1. Local Board's Proposed Budget
State law requires that a local board of education prepare a proposed annual budget that is broken down according to categories listed in the statute or required by the State Board. Annotated Code of Maryland, Education Article ("ED"), § 5-101; COMAR13A.02.01.02C (incorporating State Board's financial reporting manual). Part I of the local board's budget deals with the board's "current expense fund"; Part II concerns its "school construction fund." ED § 5-101(b). Once the local board prepares its proposed annual budget, it is subject to the county budget process and procedures. Chesapeake Charter, Inc. v. Anne Arundel County Boardof Education, 358 Md. 129, 139, 747 A.2d 625 (2000).
With respect to the current expense fund portion of the budget, revenue is divided into five categories, based on source: (1) local sources; (2) State sources; (3) federal sources; (4) unliquidated surplus from prior fiscal years; (5) all other sources. ED § 5-101(b)(1). The fourth category of revenues, "unliquidated surplus" is defined as "the actual from the previous fiscal year and the estimated from the current fiscal year, whether accrued from revenues or expenditures." ED § 5-101(b)(1)(iv). On the expenditure side, there are 14 major categories of appropriations. ED § 5-101(b)(2).[3] With respect to the school construction fund portion of the budget, there are seven categories of revenue and six *Page 180 
categories of appropriations, including "debt service." ED § 5-101(b)(3)-(4).[4]
 2. County Authority to Reduce or Condition Local Board'sBudget
The local school board must submit its proposed budget to the county government for approval. ED § 5-102. In those counties, like Wicomico, Prince George's and Montgomery, which are governed by a County Executive and County Council, the County Executive may deny in whole or reduce in part major categories of the local school board's proposed budget. The County Executive must explain in writing the reasons for the denial or reduction. The County Council may restore any denial or reduction. ED § 5-102(c); seegenerally 93 Opinions of the AttorneyGeneral 114, 115 (2008). By implication, the county's power to reduce the local board's budget means that it also has some power to condition the expenditure of the funds it does appropriate, within certain limits.[5] 85 Opinions of the AttorneyGeneral 167, 171-72 (2000).
3. Expenditures, Transfers, and Surplus
State law mandates that a local board spend "[a]ll revenues received by the county board . . . in accordance with the major *Page 181 
categories of its annual budget. . . ." ED § 5-105(a). A transfer of funds among the major categories may only be accomplished with the approval of the county governing body. ED § 5-105(b). Funds that are not expended or encumbered that fiscal year are reflected in the subsequent fiscal year's budget as surplus. ED § 5-101(b)(1)(iv).
B. Maintenance of Effort Requirement 1. Foundation Program and Maintenance of Effort
A county government's power to reduce a local school board's budget is limited by the State "foundation program" and the MOE requirements in the State education law. See 64 Opinions ofthe Attorney General 51, 53 (1979) (requirement to levy taxes to raise sufficient funds for the minimum county share — what is now called the foundation program — is mandatory); 76 Opinions ofthe Attorney General 153, 162 (1991) (failure of county to meet its MOE requirement would result in forfeit of increase in State aid otherwise due the local board). The foundation program is essentially a computation based on pupil enrollment and a dollar amount per pupil. See ED § 5-202(a)(5). Responsibility for funding the foundation amount in each jurisdiction is divided between the State and the county according to a complex formula that takes into account the relative wealth of each jurisdiction. ED § 5-202(a); see also COMAR 13A.02.06.03.
In order to receive the full State share of the foundation program for the local school system, a county must satisfy certain conditions. In particular, the county governing body must levy an annual tax sufficient to fund the local share of the foundation program. ED § 5-202(d)(1)(i). In addition, it must appropriate local funds for the school operating budget "in an amount no less than the product of the county's full-time equivalent enrollment for the current fiscal year and the local appropriation on a per pupil basis for the prior fiscal year." ED § 5-202(d)(1)(ii). Because the latter provision requires the county to maintain at least the same level of per-pupil funding as in the previous year, it is sometimes referred to as the "maintenance of effort" requirement.
2. Computation of Maintenance of Effort Amount
The statute provides further guidance on calculation of the MOE level. In particular, it specifies that "the local appropriation on a per pupil basis for the prior fiscal year" is to be computed by dividing the county's highest local appropriation to the school *Page 182 
operating budget for the prior fiscal year by the county's full-time equivalent enrollment for that year. ED § 5-202(d)(2). The statute excludes "non-recurring costs" from the formula for computing the required local funding; also, it bars the shifting of programs between the county and local board budgets "to artificially satisfy" the MOE requirement. ED § 5-202(d)(2)-(5).[6] The statute further identifies *Page 183 
certain specific costs as "non-recurring." ED § 5-202(d)(6) (e.g., computer labs, and books other than classroom texts); see also COMAR 13A.02.05.03.
State law also allows local boards to request, and county governments to appropriate, funds in excess of the MOE level. ED § 5-103(a), (b); see 81 Opinions of the AttorneyGeneral 26 (1996). Local governments have historically exceeded the MOE requirement and funded local school systems at higher levels. See Report of the Commission on Education Finance, Equity and Excellence (2002) ("Thornton Report") at 73. Therefore, it is frequently the case that when the highest local appropriation from the prior fiscal year is calculated, the MOE amount for the upcoming fiscal year ratchets up.[7]
 3. Summary of the Local Appropriation in Local BoardBudget
Thus, a county's local appropriation for its school system is made up of the local foundation share, additional amounts necessary to satisfy the MOE requirement, and any amount in excess of the MOE level that the county chooses to appropriate. State law directs county governments to raise "funds from all sources . . . [to] produce the amounts necessary to meet the appropriations made in the approved annual budget of the county board." ED § 5-104(a). Of *Page 184 
course, the county may also pay for items related to the school system through its own budget — expenditures that are not generally considered part of the foundation program or the MOE computation.
4. Waiver of Maintenance of Effort
The statute provides for temporary or partial waivers of the MOE requirement if the State Board finds that the county's fiscal condition "significantly impedes" the county's ability to satisfy the requirements. ED § 5-202(d)(7); see also COMAR13A.02.05.04. A county must request a waiver by April 1 during the prior fiscal year; the State Board must decide whether to grant the request by May 15 of that year. Id.
 5. Penalty Provision
Enforcement of the MOE requirement is assigned to the State Board. If the State Superintendent finds that a county is out of compliance, the Superintendent is to notify the county of its non-compliance. ED § 5-213(b)(1). The county may dispute that finding before the State Board, which makes a final determination as to the county's compliance. ED § 5-213(b)(2). A certification of non-compliance is sent to the State Comptroller, who is to withhold a portion of the local board's State aid. ED § 5-213(b)(3). The penalty is defined as the amount by which "the State's aid due the county in the current fiscal year [under ED § 5-202] exceeds the amount which the county received in the prior fiscal year." Id.; see also 76 Opinions ofthe Attorney General at 161-62; Letter of Assistant Attorney General Bonnie A. Kirkland to Senator Richard S. Madaleno, Jr. (May 20, 2009).
C. Purposes of the Maintenance of Effort Requirement
The MOE requirement serves at least two purposes. First, it obviously encourages a county to increase steadily its financial support of public schools. This happens because the minimum level of local funding for one year is based on the county's "highest local appropriation" to the school operating budget for the prior year.
Second, by requiring a minimum level of local funding, it ensures that State policy decisions to improve public education through enhanced financial support are not defeated by local funding decisions. Similar requirements appear in many federal statutes that provide educational funding, and for the same reason.See, e.g., 20 U.S.C. §§ 6321(a), 7901. For example, assume the Governor and *Page 185 
General Assembly intend to improve public education in the State and appropriate State funds to increase per pupil funding in each jurisdiction for that purpose. If a county could simply reduce its own financial contribution to its school system by a similar amount and devote those funds to some other purpose — e.g., a new county office building — this would effectively convert a State initiative on public education to that other purpose — new offices. (Whether the other purpose is as worthy as the public schools is not the issue; rather, it is whether the incremental State funding has been diverted to a purpose not contemplated by the Governor and General Assembly). The MOE requirement ensures that a State-level decision to increase education funding is used for that purpose at the local level. Accordingly, if a county fails to meet its MOE obligation, it loses the increment in State funding.
 II County Budget Actions Relating to Maintenance ofEffort
Eight counties initially sought waivers of the MOE requirement for Fiscal Year 2010. Ultimately, five counties withdrew their requests and only Wicomico, Montgomery, and Prince George's counties pursued the waiver process. The State Board denied each of those requests. Each of the three counties then passed budgets for the local school system that included the MOE amount. However, each county gave its local board additional directions concerning its expenditures for Fiscal Year 2010.
A. Montgomery County Request for Maintenance of Effort Waiver
On March 31, 2009, with the support of the local board of education, [8] the Montgomery County government requested a waiver of $94,852,285 of its MOE amount, which totaled $1,529,554,447. At a hearing before the State Board on April 27, the County reduced its waiver request to $79,537,322. The State Board denied the waiver request, although two members dissented from that decision. *Page 186 See In Re: Waiver Request of Montgomery County, Waiver Request No. 2009-1 (May 15, 2009).[9]
 Response of County to Denial of Waiver Request
On May 21, 2009, the Montgomery County Council adopted a Fiscal Year 2010 Operating Budget for the Montgomery County Public Schools. Montgomery County Council Resolution No. 16-971. That resolution was based in part on a County appropriation of $1,529,554,447 — the full MOE amount. Id., Background ¶ 5. The Operating Budget included a "non-categorized expenditure" identified as "debt service" in the amount of $79,537,322 that had been added by the County Council to the budget requested by the local board in order to satisfy the MOE requirement, in light of cuts made by the County government to other portions of the local board's proposed budget. Id., Action ¶ 1. This item was further explicated in conditions set forth in the resolution:
 10. This resolution appropriates $79,537,322 for the payment of debt service due in FY 10 for the construction of Montgomery County Public Schools facilities.
 a) Montgomery County Public Schools must make payment for the debt service through the Montgomery County Government as provided in subparagraph 10(c). These funds must not be spent for any other purpose.
 b) The inclusion of this amount for debt service will be part of the County's Local Appropriation and part of the calculation of the FY 11 Local Appropriation required to comply with the State maintenance of effort requirement.
 c) Reimbursement must occur no less than five days before each applicable debt service payment. *Page 187 
Id., ¶ 10. Thus, the school budget enacted by the County required the local board to reimburse the County in the amount of $79,537,322 for debt service for public school facilities and prohibited the school board from using those funds for any other purpose. We understand that debt service for public school construction has not previously been part of the MOE computation in Montgomery County.
Requests for Opinion
Shortly thereafter, the Superintendent of Schools for Montgomery County asked the State Superintendent "whether the council's action with respect to [the debt service funds] meets the maintenance of local effort requirements of Section 5-202 of the Education Article. . . ." Letter of Jerry D. Weast, Ed.D., Superintendent of Schools, to Dr. Nancy S. Grasmick, State Superintendent of Schools (June 4, 2009). The State Superintendent then asked that we provide an opinion addressing this question. More recently, on August 11, 2009, the Montgomery County Executive requested an Attorney General's opinion on essentially the same question.[10] Consistent with our policy concerning requests from local governments, the County Executive provided an opinion by the County Attorney that concluded that the County's action was consistent with the State education law.[11] *Page 188 
B. Prince George's County Request for Maintenance of Effort Waiver
On April 1, 2009, Prince George's County requested a waiver of $23,628,720 of its MOE amount of $538,114,474. The local school board opposed the waiver request. As in the case of Montgomery County, the State Board denied that request. See In R e: Waiver Request of Prince George's County, Waiver Request No. 2009-2 (May 15, 2009).[12]
 Response of County to Denial of Waiver Request
On June 1, 2009, the Prince George's County Council adopted a Fiscal Year 2010 Operating Budget that included the budget for the local school system. Bill No. CB-19-2009. That budget included a $609,503,900 local appropriation for the Board of Education. That appropriation included the full MOE amount of $538,114,474, as well as additional appropriations not part of the MOE formula.[13]
The budget ordinance placed the following conditions on the school system budget:
 SECTION 9. The budget of the Board of Education of Prince George's County includes an appropriation of $11,814,400 for the payment of debt service due in Fiscal Year 2010 for the construction of Prince George's County Public Schools facilities. *Page 189 
 (a) The Board of Education of Prince George's County must make payment for the debt service through the Prince George's County Government as provided in subparagraph (c). These funds must not be spent for any other purpose.
 (b) The inclusion of this amount for debt service will be part of the County's Local Appropriation and part of the calculation of the Fiscal Year 2011 Local Appropriation required to comply with the State maintenance of effort requirement.
 (c) Reimbursement must occur no less than five days before each applicable debt service payment.
Id., § 9. Thus, employing language virtually identical to that in the Montgomery County budget, the Prince George's County Council required the local school board to reimburse the County in the amount of $11,814,400 for debt service for public school facilities and prohibited the board from using those funds for any other purpose. We understand that debt service for public school construction had not previously been included in MOE computations for Prince George's County.
Like the Montgomery County Superintendent, the Prince George's County Superintendent sought advice from the State Superintendent as to whether the County's budget action was consistent with the MOE requirement. Letter of Dr. William Hite, Superintendent of Prince George's County Schools, to Dr. Nancy Grasmick, State Superintendent of Schools (June 9, 2009). At the request of the State Superintendent, we agreed to address the Prince George's County issue in this opinion.
C. Wicomico County
To recount fully the circumstances in Wicomico County, we must take a short detour to a prior fiscal year.
2007 — Creation of School Construction Savings Plan
In June 2007, the Wicomico County Council passed a resolution establishing a "School Construction Savings Plan," under *Page 190 
which a portion of any surplus school funds at the end of each fiscal year would be transferred to the local board's school construction fund.[14] As noted above, State law allows for a local school board to *Page 191 
transfer funds among the "major categories" of its budget, with the approval of the local governing body. ED § 5-105(b). Thus, while surplus funds would ordinarily appear in the revenue estimates in the subsequent year's budget, see ED § 5-101(b)(1)(iv), those funds could be transferred to another category — such as the school construction fund — with the consent of the County governing body. In essence, the resolution constituted the County's advance consent for such a transfer each year of a portion of the local board's operating surplus to its school construction fund.
We understand that, pursuant to the 2007 resolution, a portion of surplus school board funds have been transferred to the board's school construction fund during the last two years to become part of *Page 192 
the available revenues for that portion of the local board's budget. The transferred funds were designated for school capital construction projects. Wicomico County Council Resolution 88-2007 at ¶ 3. The fund grew to about $3,000,000 as of June 2009.
2009 — Request for Maintenance of Effort Waiver
On April 1, 2009, Wicomico County government requested that the State Board of Education waive $2,000,000 of the County's Fiscal Year 2010 MOE requirement of $50,781,711 for funding education. The local superintendent opposed the waiver request. The State Board denied that request. See In Re: Waiver Request of WicomicoCounty, Waiver Request No. 2009-3 (May 15, 2009).[15]
 Response of County to Denial of Waiver Request
After the waiver request was denied, the County sought a proposal from the local board as to how to make up the $2,000,000 shortfall in compliance with the MOE law. Letter of Richard M. Pollitt, Wicomico County Executive, to Dr. John Fredericksen, Wicomico County Superintendent, and Ms. Robin Holloway, Chair, Board of Education (May 15, 2009). The local superintendent proposed, among other things, that the funds transferred to the school construction fund under the 2007 resolution could be utilized. Letter of Dr. John E. Fredericksen, Wicomico County Superintendent, to Richard M. Pollitt, Jr., Wicomico County Executive (May 20, 2009).
On June 2, 2009, the County Council passed a new resolution amending its 2007 resolution to direct the local board of education to make a payment of $2,000,000 from the school construction fund to the County government for fiscal year 2010 "to partially cover the debt service on school construction projects." Wicomico County Council Resolution No. 85-2009 (June 2, 2009).[16] On that same day, *Page 193 
it passed its budget bill, which reflected the $2,000,000 transfer of funds from the local board to the County as "reimbursement for school construction debt service." Bill No. 2009-07, Exhibit A-2.[17] We understand that school construction debt service had been paid from the County budget in prior years and that it has not been part of the MOE calculation for Wicomico County. The budget also *Page 194 
reflected that a $2,000,000 increment was added to the local board's operating budget "to fully satisfy MOE requirement." Id.
The County asked the local board to obtain an Attorney General's opinion on whether these budget actions complied with the MOE requirement in the State education law. Thereafter, Fulton P. Jeffers, Attorney for the Wicomico County Board of Education, requested an opinion, on behalf of that board, whether the County's action satisfied the MOE requirement.
 III Analysis
In an effort to satisfy the MOE requirement, each of the three counties has required its local board to devote part of its budget for Fiscal Year 2010 to the payment of debt service on public school construction that was previously paid from the county's budget. Montgomery and Prince George's counties have done so by transferring part of the obligation to pay debt service to the school operating budget. Wicomico County has done so by transferring part of the debt service obligation to the local board's school construction fund.
A. Transfer of Debt Service Obligation to Meet Maintenance ofEffort Requirement
Both Montgomery County and Prince George's County have attempted to satisfy the MOE requirement for Fiscal Year 2010 by transferring a particular item (a portion of school debt service obligation), and the funds associated with it, that appeared in the county government budget in Fiscal Year 2009 to the school operating budget for Fiscal Year 2010. In each case, the county appropriated funds in the local board's operating budget for a purpose not requested by the local board of education — payment of debt service for school construction through the county. In each case, the county also placed a condition on the expenditure of those funds that prohibited the local board from spending the funds for any other purpose. We are advised that similar appropriations for debt service and conditions did not appear in the budget of the local boards of education for the prior fiscal year — Fiscal Year 2009 — in either county.
Such an action raises at least two issues under the MOE law. First, the MOE law concerns the local appropriation to the "school *Page 195 
operating budget." Is an appropriation restricted to payment of school debt service properly considered part of the local board'soperating budget? Second, even if school debt service may properly be part of the school system's operating budget, how does its appearance in that budget for the first time affect the MOE computation for Fiscal Year 2010?
1. Debt Service as Part of the School Operating Budget
With respect to the first issue, the listing of categories for the current expense fund of local school budgets in Part I of ED § 5-101(b) does not include a category for debt service for school construction. Categories related to school construction appear in Part II of a local board's budget (referred to as the "school construction fund"), including a specific category for "debt service." ED § 5-101(b)(4)(vi). If the "school operating budget" in the MOE statute were equated with the "current expense fund" in the budget statute, an appropriation for debt service would clearly not be taken into account to determine compliance with the MOE requirement.
In a 1991 opinion, this Office was required to construe the phrase "school operating budget" as used in the MOE statute. 76 Opinions of the Attorney General 153 (1991). That opinion concerned the effort of Howard County to exclude certain items that had been part of the prior year's appropriation from the concept of "school operating budget" and thereby to reduce the MOE target level for the upcoming fiscal year. Equating "school operating budget" with "basic current expenses" (as the current expense fund was then called), the Howard County Solicitor had found that action legally permissible.
Attorney General Curran concluded that "school operating budget" is a "broadly inclusive term" that is not limited to the list of expenses then defined as "basic current expenses" in ED § 5-101. See 76 Opinions of the AttorneyGeneral at 158. Indeed, for MOE purposes, the "school operating budget" would include "all expenditures for the on-going educational functions of the public school system, as distinct from capital expenditures." Id. The opinion rejected the contention that all items excluded from the definition of "basic current expenses" — a list that included debt *Page 196 
service, among other things — would automatically be excluded from "school operating budget." Id. at 159-61.[18]
The opinion did not catalog all of the items that could be included or excluded from the "school operating budget" for MOE purposes, but offered a few examples. (At that time, the MOE statute did not specifically provide for non-recurring expenses to be excluded from the prior year's appropriation in the computation of the MOE target amount). With respect to items that could be excluded, it cited the example of start-up costs to equip a new library that are not recurring. "In our view, suchone-time costs can fairly be viewed as capital expenditures that may be excluded when calculating the local maintenance of effort amount." Id. at 160 (emphasis added); see also
Letter of Assistant Attorney General Richard E. Israel to Delegate Norman H. Conway (January 2, 1996) at p. 1 (referring to permissible exclusion of "one-time capital costs" from MOE computation).
After the 1991 opinion was issued, the Legislature amended the MOE statute to provide further guidance on items that can be disregarded for purposes of the MOE computation and delegated further elaboration to the State Board. See Chapter 175, Laws of Maryland 1996, now codified at ED § 5-202(d)(3)-(6); seealso COMAR 13A.02.05.03. Like the 1991 opinion, this clarification concerned items that could be excluded from the amount of the prior fiscal year's appropriation to compute the MOE level for the next fiscal year. The exclusion of non-recurring expenses in the prior year's budget would, of course, have the effect of reducing a county's required appropriation under the statutory formula for computing the MOE target amount. Debt service was not specifically listed among such items, again suggesting that it is not necessarily excluded from the concept of "school operating budget."
In our view, an appropriation of local funds in the school operating budget for recurring debt service payments for public school construction may be counted toward satisfaction of a county's *Page 197 
MOE target.[19] However, the transfer of a debt service obligation from the county budget to the school system budget may affect how it is counted for MOE purposes in the year in which the transfer is made.
2. Effect of Including Debt Service for the First Time
With respect to the second issue, Montgomery and Prince George's counties are attempting to meet the MOE obligations by effectively including a new item in the local board's budget for the current fiscal year. In both cases, debt service was previously paid from appropriations in the county's budget. Thus, an expense has been shifted from the county budget in the prior fiscal year to the local board budget in the current fiscal year so that the funds associated with that expense appear in the current school budget for the purpose of satisfying the MOE requirement.[20]
As indicated above, the MOE statute provides that "[p]rogram shifts between a county operating budget and county school operating budget may not be used to artificially satisfy the [maintenance of effort] requirements. . . ." ED § 5-202(d)(2).[21] In *Page 198 
other words, the test whether a county has met its MOE obligation is to be computed on an "apples to apples" basis. See Letter of Assistant Attorney General Richard E. Israel to Delegate Norman H. Conway (January 2, 1996) at pp. 2-3 n. 1 ("artificial" shifting of education expenses to be disregarded for MOE purposes whether it involves shifting into or out of the local board's budget). Thus, it appears that, in order to assess accurately whether a county has met that obligation, the computation must include one of the following adjustments: (1) the debt service appropriation for the current fiscal year must be excluded from the comparison; or (2) an equivalent portion of the appropriation for school debt service in the prior county budget must be included as part of the "highest local appropriation to [the] school operating budget for the prior fiscal year" in the computation of the target MOE level.[22]
Otherwise, the computation does not accurately assess changes in county support, as intended by the MOE law.
In our opinion, the inclusion of an appropriation for debt service in the Fiscal Year 2010 budget for a local school system cannot be used to satisfy the MOE target if the same expense — and appropriation — were not a part of the computation of the highest local appropriation for the school operating budget for the prior fiscal year — Fiscal Year 2009. *Page 199 
B. Direction to Local Board to Use Other Funds for DebtService
Wicomico County has appropriated the full MOE amount for the local school system in its Fiscal Year 2010 budget. Unlike Montgomery and Prince George's counties, it has not directed the local board to devote any of the funds comprising the MOE amount to debt service for school construction. Wicomico County did not include debt service payments as part of its MOE computation in prior years and is not purporting to do so for Fiscal Year 2010. Thus, in contrast to the situation in Montgomery and Prince George's counties, the MOE target has not been met by an appropriation that was shifted from the county budget.
It is true that, in a separate resolution, the County has directed the local board to pay $2,000,000 — the amount of the County's waiver request — from the local board's school construction fund toward debt service. That item was previously paid from the County budget. However, the use of this mechanism appears consistent with the State education law. The funds used for these payments derive from past surplus funds in the local board's budget that could not be counted toward the County's MOE target amount.[23] The funds are available as a result of past transfers of unliquidated surplus from the current expense fund portion of the local board budget to the school construction fund in accordance with ED § 5-105. The use of moneys from the school construction fund to pay debt service is *Page 200 
consistent with the purpose of that portion of the school system's budget. See ED § 5-101(b)(4)(vi).
Finally, this mechanism was originally proposed by the local board after the State Board denied the County's waiver request. We realize that the local board's proposal to use the surplus in its school construction fund was no doubt inspired by a desire to help the County address budgetary shortfalls and to avoid the adverse effect to the school system of losing the incremental State aid if the MOE obligation were not met. Nevertheless, the County's acquiescence in the local board's request to use those funds for debt service is a lawful use of those funds separate from the MOE computation.
The shifting of the obligation to make a portion of debt service payments from the County budget to the school system's school construction fund does not "artificially satisfy" the MOE requirement because the County has also appropriated the full MOE amount without conditioning the use of the MOE funds. Although similar, there are critical distinctions between the device used by Montgomery and Prince George's counties, on the one hand, and that used by Wicomico County, on the other. While all three counties directed their local boards to expend funds on debt service, Montgomery and Prince George's counties did so by restricting the use of funds for that purpose (for the first time) while Wicomico County did not. Rather, in accordance with the proposal of the local board, Wicomico County was able to tap funds for debt service that were not part of the MOE computation. Thus, in our view, the mechanism employed by Wicomico County may be used to satisfy the County's MOE obligation.
 IV Conclusion
For the reasons set forth above, the measure taken by Montgomery and Prince George's counties is not a permissible means of satisfying a county's MOE obligation for Fiscal Year 2010. The MOE law states that shifting appropriations between a county budget and the school budget "may not be used to artificially satisfy" the MOE requirement. The shifting of debt service to the school board budget for the first time for Fiscal Year 2010 artificially satisfies the MOE requirement, unless a corresponding adjustment is made to the prior year's budget in computing the MOE target amount. By contrast, Wicomico County has fully funded the MOE target without conditioning the expenditure of those funds for debt *Page 201 
service obligation previously paid by the County. The use, at the suggestion of the local board, of separate surplus funds in its school construction fund for debt service appears consistent with the State education law and the purpose of that fund.
 Douglas F. Gansler Attorney General
 Elizabeth M. Kameen Assistant Attorney General
 Robert N. McDonald Chief Counsel Opinions and Advice
[1] In using the term "artificially" in this context we do not mean to imply improper conduct or subterfuge on anyone's part; rather, we are simply construing the statutory language. Our opinion relates only to whether the MOE requirement may be satisfied through this particular device as a matter of law. We do not assess whether either county has, or may, satisfy the MOE requirement in some other way. The factual determination whether a county has satisfied the MOE requirement rests with the State Superintendent and ultimately the State Board. Annotated Code of Maryland, Education Article, § 5-213.
[2] As in most contexts, "county" includes Baltimore City. Annotated Code of Maryland, Education Article, § 1-101(c).
[3] These categories include: (1) administration at the local board and executive level; (2) mid-level administration, including school principals and other administrative and supervisory staff; (3) instructional salaries; (4) textbooks and classroom instructional supplies; (5) other instructional costs; (6) special education; (7) student personnel services; (8) health services; (9) student transportation; (10) operation of plant and equipment; (11) maintenance of plant; (12) fixed charges; (13) food services; and (14) capital outlay. ED § 5-101(b)(2).
[4] The school construction fund includes the following categories of estimated receipts: (1) local sources; (2) bonds; (3) State General Public School Construction Loan; (4) State sources; (5) Federal sources; (6) unliquidated surplus; and (7) all other sources. ED § 5-101(b)(3). The school construction fund also includes the following categories of appropriations: (1) Land for school sites; (2) buildings and the equipment that will be an integral part of a building by project; (3) school site improvement by project; (4) remodeling by project; (5) additional equipment by project; and (6) debt service. ED § 5-101(b)(4).
[5] The power to regulate a school system's expenditures by conditioning how appropriated funds must be spent is constrained by the State's preemption of education policy. 85 Opinions ofthe Attorney General 167, 172 n. 2; see also McCarthy v. Boardof Education of Anne Arundel County,280 Md. 634, 643-651, 374 A.2d 1155 (1977), Board of Education ofMontgomery County v. Montgomery County,237 Md. 191, 205 A.2d 202 (1964). In other words, any conditions set by a county government on local board expenditures may not impinge on the school board's discretion to set education policy in accordance with State law.
[6] The statute reads:
 (2) Except as provided in paragraph (3) of this subsection, for purposes of this subsection, the local appropriation on a per pupil basis for the prior fiscal year for a county is derived by dividing the county's highest local appropriation to its school operating budget for the prior fiscal year by the county's full-time equivalent enrollment for the prior fiscal year. . . . Program shifts between a county operating budget and a county school operating budget may not be used to artificially satisfy the requirements of this paragraph.
 (3) For purposes of this subsection, for fiscal year 1997 and each subsequent fiscal year, the calculation of the county's highest local appropriation to its school operating budget for the prior fiscal year shall exclude:
 (i) A nonrecurring cost that is supplemental to the regular school operating budget, if the exclusion qualifies under regulations adopted by the State Board; and
 (ii) A cost of a program that has been shifted from the county school operating budget to the county operating budget.
 (4) The county board must present satisfactory evidence to the county government that any appropriation under paragraph (3)(i) of this subsection is used only for the purpose designated by the county government in its request for approval.
 (5) Any appropriation that is not excluded under paragraph (3)(i) of this subsection as a qualifying nonrecurring cost shall be included in calculating the county's highest local appropriation to its school operating budget.
ED § 5-202(d)(2)-(5). The last sentence of ED § 5-202(d)(2) refers to program shifts that would artificially satisfy the requirements of "this paragraph," which may raise some question as paragraph (d)(2) does not itself impose a requirement but rather helps define the target MOE level. The MOE requirement itself is set forth in subsection (d). This anomaly is apparently the result of a drafting error. When the MOE requirement was originally enacted by Chapter 85, Laws of Maryland 1984, it appeared in a paragraph — ED § 5-202(b)(3) (1984). A subsequent amendment of ED § 5-202 involved a retabulation of its various provisions that converted paragraphs to subsections, including the paragraph containing the MOE requirement. This particular reference was apparently overlooked. See Chapter 288, Laws of Maryland 2002.
[7] In some instances, State law dedicates certain local revenues to educational purposes without affecting the county's MOE obligation. See, e.g., Annotated Code of Maryland, Article 24, § 9-606 (sales and use tax on telecommunications service in Prince George's County are to be devoted to public schools, but may not supplant State or local aid to the county school system).
[8] The local board of education placed certain conditions on its support for the waiver — e.g., no further cuts to the school budget and computation of the next year's maintenance of effort level based on the fiscal year 2009 appropriation.
[9] See www.marylandpublicschools.org/NR/rdonlyres/C7373AA6-0C41-41D2-A526-80EB30FACB95/20058/Montgomery_County.pdf
[10] The County Executive asserted that the County had also considered transferring to the school budget two other programs that had traditionally been funded in the County's operating budget: (1) assignment of 117 crossing guards and 38 police officers to the school system; and (2) assignment of 318 nurses and health technicians to the school system.
[11] While the memorandum of the County Attorney was well-researched and well-argued, consistent with the usual high standards of that office, we respectfully disagree with some of its conclusions. See Part III.A. below.
We also solicited the views of other county attorneys and counsel for local boards of education through the Maryland Association of Counties and the Maryland Association of Boards of Education on the questions posed on the MOE requirement. We received no submissions in response to those inquiries.
[12] See www.marylandpublicschools.org/NR/rdonlyres/C7373AA6-0C41-41D2-A526-80EB30FACB95/20059/Prince_George.pdf. On June 12, 2009, Prince George's County government filed in circuit court a petition for judicial review of the State Board's decision denying the waiver request. The local board has filed a motion to dismiss that action, which is scheduled to be heard on November 16, 2009. That litigation concerns the County's waiver request, not the means by which the county later attempted to meet its MOE obligations.
[13] Revenues derived from a local sales and use tax on telecommunications service that are devoted to the public schools are not part of the MOE computation. Annotated Code of Maryland, Article 24, § 9-606(e). Also, any increment in a local energy tax must be appropriated to the local school system in additionto the MOE obligation. Id., § 9-603(g).
[14] The Resolution stated in full:
 A RESOLUTION APPROVING THE ESTABLISHMENT OF A SCHOOL CONSTRUCTION SAVINGS PLAN.
 WHEREAS, Section 5-105 of the Education Article of the Annotated Code of Maryland provides that a transfer between major categories of the budget of a County Board of Education shall be made only with the approval of the County Council; and
 WHEREAS, all unexpended and
 unencumbered appropriations in the current expense budget remaining at the end of the fiscal year shall revert to the County's General Fund; and
 WHEREAS, the Board of Education has requested the establishment of a School Construction Savings Plan on the terms and conditions set forth herein.
 NOW, THEREFORE, BE IT RESOLVED, by the County Council of Wicomico County, Maryland that the Wicomico County Board of Education shall be permitted to establish a School Construction Savings Plan as follows:
 1. The Board of Education, County Executive and County Council agree that the base level for the Board of Education's end of year undesignated fund balance carryover to the next budget cycle shall be $300,000.00.
 2. The Board of Education, County Executive and County Council agree that any amount exceeding the base level, after completion of the Board's audit and all audit adjustments have been posted, shall be transferred to the Board's School Construction Fund.
 3. Expenditures of funds credited to the School Construction Fund under this policy may only be for capital construction projects included in the Wicomico County Capital Improvements Program for Board of Education projects, or capital construction projects included in the capital outlay category in the then current fiscal year's operating budget and reviewed by the School Building Commission.
 4. In any given fiscal year, the County Executive with the approval of the County Council may modify the base level prior to June 30. The Board of Education may request a modification of the base level in writing to the County Executive and County Council at least 60 days prior to June 30, stating the rationale for the modification.
 5. In any given year, the County Executive or the County Council may elect not to exercise this savings plan, in which event, notification shall be provided to the Board of Education, 30 days prior to June 30.
 6. The County Executive and/or the County Council may terminate this policy at any time, and in the event of such termination will notify the Board of Education, in writing. Such notification shall be provided, at least 30 days prior to the end of the fiscal year.
Wicomico County Council Resolution 88-2007 (June 5, 2007). As indicated in the second recital of the resolution, it was apparently adopted under the misunderstanding that unexpended and unencumbered appropriations of the local school board would revert to the County's general fund. In fact, pursuant to ED § 5-101(b)(1)(iv), such funds are to be included as "unliquidated surplus" in the revenue portion of the local board's budget for the next fiscal year. The resolution was amended in 2009 to correct this misunderstanding. Wicomico County Council Resolution 85-2009 (June 2, 2009).
[15] See www.marylandpublicschools.org/NR/rdonlyres/C7373AA6-0C41-41D2-A526-80EB30FACB95/20074/AmendedWicCoDecision.pdf
[16] The 2009 Resolution amended Paragraph 3 of the 2007 Resolution as follows:
 3. Expenditures of funds credited to the School Construction Fund under this policy may only be for capital construction projects included in the Wicomico County Capital Improvements Program for Board of Education projects, or capital construction projects included in the capital outlay category in the then current fiscal year's operating budget and reviewed by the School Building Commission PROVIDED, HOWEVER, THAT FOR FY 2010 THE FOLLOWING TERMS SHALL APPLY TO EXPENDITURES:
 A. THE WICOMICO COUNTY BOARD OF EDUCATION SHALL MAKE A PAYMENT TO THE WICOMICO COUNTY GOVERNMENT TO PARTIALLY COVER THE DEBT SERVICE ON SCHOOL CONSTRUCTION PROJECTS.
 B. SUCH EXPENDITURE SHALL EQUAL THE SUM OF TWO MILLION DOLLARS ($2,000,000), AND SHALL BE PAID IN A LUMP SUM WITHIN 30 DAYS OF THE START OF THE NEW FISCAL YEAR.
 C. THE PAYMENT WILL BE SET ASIDE IN A RESERVE FOR THE STATED PURPOSE AND PAYMENTS WILL BE MADE BY THE COUNTY TO THE BOND PAYING AGENT.
 D. THIS APPROPRIATION FOR DEBT SERVICE IS REQUIRED FOR FY 2010 ONLY.
Wicomico County Council Resolution No. 85-2009 (June 2, 2009).
[17] The budget was approved by the County Executive on June 10, 2009.
[18] An appropriation for debt service for public schools was not specifically at issue in the opinion. Howard County's certification of the prior year's school budget, which was the starting point for the MOE computation, had not included debt service — and therefore there was no effort to exclude it from the computation. See
76 Opinions of the Attorney General at 155-56 n. 5.
[19] The Montgomery County Attorney concluded that debt service is an expense category properly included in the school operating budget, reasoning that debt service appropriations appear in the State operating budget. The County Attorney also read the 1991 opinion to include debt service as part of a school operating budget. For the reasons indicated in the text, we agree that debt service may be included in the "school operating budget," although it is not required.
Finally, the County Attorney also concluded that ED § 5-201(e), which excludes debt service from calculation of the local share of the foundation program, does not preclude including debt service in MOE computations. We agree that this statute pertains only to the computation of the foundation program amount, which is distinct from the MOE target level.
[20] It is also notable that the dedication of school board funds to debt service was not requested by the local boards in their proposed budgets, but rather imposed by the counties as a condition on the expenditure of part of the local funds appropriated in the school board budget. The imposition of such a condition on the school board budget could itself be contrary to the State education law if it has the effect of interfering with education policy. See note 5 above.
[21] Similarly, if a program has been shifted from the school operating budget to the county operating budget, it is to be excluded from the prior year's appropriation in computing the target maintenance of effort level for the current fiscal year. ED § 5-202(d)(3)(ii).
[22] The Montgomery County Attorney takes the position that, although a local government cannot meet its MOE target by artificially shifting a "non-education program" to the school operating budget, it may shift the cost of an education-related program. We agree that a county could not satisfy its MOE obligation by artificially including non-education programs in the school budget. However, the statutory directive to disregard program shifting between the county budget and school board budget is not limited to non-education programs. Indeed, a related statutory provision concerning program shifting that allows a reduction in the MOE target level when a program is shifted from the local board budget to the county budget necessarily concerns education programs. See ED § 5-202(d)(3)(ii).
[23] Those funds could not be used to satisfy the MOE obligation for several reasons. First, as indicated in Part I.A.1 above, surplus funds constitute a category of revenue in the school board budget separate from the "local" appropriation. See
ED § 5-101(b)(1)(i), (iv). The MOE obligation must be satisfied by the appropriation of local funds, not surplus funds. ED § 5-202(d)(1)(ii); see Letter of Assistant Attorney General Richard E. Israel to Delegate Robert L. Flanagan (June 6, 1996) ("Although surplus is carried over as a receipt, it is not a factor in determining whether maintenance of effort has been satisfied").
Moreover, surplus funds may be originally derived from State, federal, and other sources, while the MOE target must be satisfied by local appropriations. In some cases, it might be possible to attribute a portion of surplus to a local source. Cf.
87 Opinions of the Attorney General 66 (2002) (discussing whether Frederick County Commissioners could approve an increase in the school system budget for surplus attributed to "local" sources). Even then, to the extent that a portion of the surplus could be traced to a local appropriation from a prior year, the inclusion of that surplus in the MOE computation in the current year would be to double-count those funds for MOE purposes.
 *Page 3